### MEXICAN NATIONAL RAILWAY COMPANY V. MARY FINCH.

#### No. 451.

1. **Charge of Court—Special Instructions.**—Where principles of law applicable to the case are properly stated in the general charge of the court, it is unnecessary, if not error, to repeat them in special charges requested by one of the parties.

2. **Same—Contributory Negligence.**—A charge, to the effect that if the danger incurred by the deceased at the time of his death was obvious and patent to the observation of a reasonable and prudent man, plaintiff can not recover for such death, and that all persons are presumed to be reasonably cautious and prudent until the contrary is shown, approved.

3. **Master and Servant—Vice-Principal.**—Where there was evidence tending to show that deceased, at the time of the injury, was working with another employe who had authority to direct him in the performance of the work then in hand, it was a question of fact to be determined by the jury whether or not such other employe was a fellow servant or a vice-principal.

4. **Practice on Appeal—Assignment of Error.**—An assignment of error which complains of a paragraph of the charge of court, without specifying or indicating any error therein, will not be considered.

5. **Damages—Excessive Verdict.**—Deceased was 38 years old at the time of his death, unmarried, and was earning $30 per month, with which he supported his widowed mother, whose sole support he was, and his expectancy of life was 29.6 years; that of his mother, then 61 years of age, being 13½ years. *Held*, that a verdict of $6000 in favor of the mother for injuries causing his death was excessive to the amount of $3000.

APPEAL from Webb.    Tried below before Hon. A. L. McLANE.

*Dodd & Mullaly* and *Denman & Franklin*, for appellant.—1. The court erred in submitting to the jury, as a question of fact, whether Faulk and High were fellow servants, the evidence of the relationship of the parties being undisputed, and they under the law being fellow servants, and the court should so have instructed the jury. Railway v. Whitmore, 58 Texas, 276; Pat. Law of Ry. Acc., sec. 323.

2. The court erred in charging the jury that a "vice-principal is one who is intrusted by the company with the authority to superintend, control, or command other persons employed by the company, or with the authority to direct any other employe in the performance of his duty." Acts 1893, p. 120.

3. The plaintiff in no event was entitled to recover any sum in excess of a sum which would be the equivalent of what she may reasonably have expected to receive from her son had he lived. Railway v. Kindred, 57 Texas, 502.

*F. B. Earnest* and *E. A. Atlee*, for appellee.—1. The facts show, that at the time of the injuries the deceased was not a fellow servant of Kelly, nor of Faulk; but at the time Faulk was authorized by the defendant to direct and was directing deceased, an employe of defendant, in the performance of his duty as such employe. Faulk was a vice-principal, and not a fellow servant. Acts 1891, p. 25; Acts 1893, p. 120.

2. The charge requested and refused was sufficiently given, and the court did not err in refusing the charge requested. Railway v. Callbreath, 66 Texas, 529; Railway v. Crenshaw, 71 Texas, 347; Railway v. White, 76 Texas, 102; Railway v. Winton, 26 S. W. Rep., 770; Arabillo v. Railway (Texas), 11 S. W. Rep., 913; Martin v. Railway, 26 S. W. Rep., 1052; Wood's Mast. and Serv., secs. 349–355; Railway v. Silliphant, 70 Texas, 623; Railway v. Taylor, 79 Texas, 104.

3. It was for the jury to determine under proper instructions whether or not the relation of master and servant existed between Faulk and High. The charge requested would withdraw such question from the jury, and it was properly refused. Acts 1893, p. 120.

4. Under the charge of the court and the facts of the case a verdict for $6000 is not excessive, and the jury in such case can not be held to absolute mathematical certainty in estimating damages. Railway v.

Lester, 75 Texas, 56; Railway v. Lehmberg, 75 Texas, 61; Railway v. Kindred 57 Texas, 491; Railway v. Lee, 70 Texas, 496; Railway v. Arispe, 23 S. W. Rep., 928; Railway v. Ewing, 26 S. W. Rep., 638; Railway v. Parr, 26 S. W. Rep., 861; Railway v. Worthy, 27 S. W. Rep., 426.

NEILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment of $6000 recovered by appellee against appellant for negligently killing Fred High, her son.

*Conclusions of Fact.*—On the 1st day of March, 1893, Ed. Kelly was foreman of the boiler shops of the Mexican National Railroad Company, in Laredo, Texas, and had been for nearly two years prior to that time. William Faulk at that time was an apprentice in the boilermaker's department of said company in its shops in Laredo, where he had been in such capacity about two years also. Fred High was at that time laborer or "helper" in said shops, where he had been as such employe about three months prior to that date. Kelly's duty as such foreman was to see that the men in that department did their work, to assign the work to be done to the men and their apprentices, and to give them "helpers" and manage the department generally, the mechanics, apprentices, and helpers in his department being under his control. When an apprentice and "helper" in the department are working together on a given job, the "helper" is under the direction of the apprentice to the extent that he must assist in the work as the apprentice tells him. But an apprentice can neither employ nor discharge a "helper."

The way the company changed a water tank into an oil tank was by taking off connections at the ends of the tank, reaming out the holes, which are about two inches in diameter, screwing in cast copper plugs and driving them up both inside and outside, thus forming a rivet. When a sand hole was discovered in one of these plugs after it had been so fixed in a tank, the proper way to repair it was to drill out the hole in the plug, thread it, and screw in a wrought copper plug, thus putting a plug within a plug, and hammer each end thereof inside and outside.

About a month prior to the date above mentioned, a number of water tanks of the appellant were changed to oil tanks in the manner above stated. They were so changed by William Clark, another boilermaker's apprentice, at the Mexican National Railroad shops in Laredo, Fred High being his helper. Clark reamed out the holes, High assisting in pulling the wrench. Clark then hammered up the plugs both inside and out, High holding a bar against them outside while Clark did the hammering inside, and holding it on the inside while Clark hammered outside. It was dark in the tanks, and when High went in there he always took a light in with him. In doing this work,

it was his duty under the rules of the company to do as Clark, the apprentice, directed him, which he did.

A tank which had been used in the water service of appellant, had, in the manner indicated, been changed to an oil tank and filled with crude petroleum oil, when a leak was noticed through a sand hole in the copper plug which had been placed in the tank to change the character thereof. An employe had the oil pumped out, and notified an agent of the company to take the tank away, on account of the generation of gas in it from the oil. Within an hour after the notification, the tank was moved to the yard of appellant's shops in the city of Laredo.

On the next day, which was the 1st day of March, 1893, after the removal of the tank, the apprentice, William Faulk, who was then 17 years old, and had never repaired a tank before, was sent by Ed. Kelly, with Fred High as his helper, to repair the leak in the tank, Kelly having told the apprentice what was necessary to do. Faulk drilled and tapped a half-inch hole in the copper plug with a ratchet and drill, High helping him by pulling the ratchet. Kelly was present when the hole was tapped, and then told High to hold a bar against the plug on the inside of the tank while Faulk drove it up from the outside. When the hole was drilled, Faulk went to the shops to get the copper plug, upon which a thread had been cut by another apprentice to fit into it, and High went back, under Kelly's instructions, to carry the tools they had used in drilling the hole. When Faulk returned with the plug he carried a torch to the tank, because Kelly had told him, when he got the plug screwed in, to hammer it out both inside and out, and it was too dark in the tank to see to work without a light. Kelly saw him as he was carrying the light there, and told him to be careful with it when he got inside the tank; and High was not present then, nor was such caution heard by or repeated or given to him. Kelly was not present at the tank after the parties returned, High then being directly under the control and direction of Faulk in finishing the work. When Faulk returned to the tank, High was there. The plug was then screwed in the hole by the apprentice. About an hour before, Faulk had opened the dome hole, and there saw about an inch of oil in the bottom of the tank, which, he testified, was very black and emitted a strong smell. As to whether High was informed by Faulk as to the oil being in the tank, the testimony is conflicting, Faulk, the only witness on the subject, testifying in one place, "I didn't tell High there was oil in the tank, but he saw oil at the leak;" and afterwards, "When I took off the dome cap, Kelly was present, and I told him there was oil in the tank;" and again, "When I opened the dome cap and told Kelly that there was oil in the tank, High was standing at the end of the car upon which the tank was resting, and I don't know whether he heard me mention the oil or not."

After Faulk screwed the plug in, he told High to go in the tank and see if it was in far enough; and High, in obedience to his instructions,

went in through the dome hole, which is midway between the ends, pulling the torch in after he had entered, and in about a minute afterwards an explosion, occasioned by the ignition of the gas from the torch, occurred, of such force as to blow High out of the tank, whereby he was severely injured, from which injuries he died three days afterwards. Kelly testified, that "the plug needed no hammering, and that he gave no directions to any one to go in the tank." Thomas Milan, a machinist, who was superintendent of motive power and machinery of appellant, testified, that "the plug needed no hammering."

From the evidence collated in this paragraph, we conclude: (1) that the tank at the time it was repaired was charged with explosive gas; (2) that the fact was known to appellant; (3) that Fred High was not informed by the company of the presence and danger of gas before he entered the tank, and wholly ignorant of it, nor was the danger apparent or obvious to him; (4) that, whether it was necessary for him to enter the tank or not, he was told by both Kelly and Faulk, appellant's vice-principals, in pursuance of their employment, to do so, both of whom knew or apprehended the danger of his going in there with a torch, which it was necessary for him to carry in order to perform the service directed of him; and (5) if it was not necessary to complete the work for one to enter the tank, Kelly should have so informed the apprentice, who had never done a job of that kind of work before, and not have told him to hammer the plug both in and outside the tank, nor instructed High to go in the tank and hold a bar against the plug while Faulk hammered it on the outside, as is shown by the testimony of Faulk he did.

Fred High, who was 38 years old at the time of his death, was the son of the appellee, Mary Finch, who was and is a widow, and then 61 years old. Fred was his mother's only support. He had never married, was an affectionate son, giving his mother, with whom he lived, all the wages he earned, which was $30 per month, except enough to buy his clothes, out of which were supported appellee's mother, her little son, and two grandchildren, all of whom lived with her. The evidence showed, that the expectancy of a person, either male or female, 61 years of age, is 13½ years, and of a man 38 year old is 29.6 years. From the evidence recited in this paragraph, we conclude that the appellee was damaged $3000 in the loss of her son.

*Conclusions of Law*—The appellant's first, second, third, fourth, and fifth assignments of error, which complain of the court's overruling a general demurrer and certain special exceptions to plaintiff's petition, are wholly without merit.

The appellant asked the court to give the jury the following special charges:

"Deceased, High, in repairing the oil tank, was bound to exercise such care as a reasonably prudent person would have exercised under like circumstances; and if you believe from the evidence that it was

dangerous for him to go into said oil tank with a lighted torch, and that said danger was obvious and apparent to an ordinarily prudent man, and nevertheless said High went into said tank with a lighted torch and was killed by an explosion of gas therein, caused by ignition by said torch, you will find for defendant, although you may believe from the evidence that defendant company did not warn said High of the danger of going into said tank with said lighted torch.

"If you believe from the evidence that deceased, Fred High, went into an oil tank with a lighted torch, and knew, or could have known, by the exercise of ordinary care, that it was dangerous to do so, and that the gases in said tank ignited from said torch and exploded and caused the death of said High, then you will find for defendant.

"If you find that it was dangerous for Fred High to go into the oil tank wherein he met his death, and that such danger was equally open to defendant and said High, then defendant owed said High no duty to warn him of such open danger; and if you believe said High went into said tank with a lighted torch and thereby met his death, you will find for defendant."

The refusal of the court to give these charges is assigned as error. In the seventh paragraph of the court's general charge, the jury were instructed: "If you believe that High knew there was oil in the tank, and that by the exercise of ordinary care he ought to have known of the danger of entering it with a lighted lamp, then you will find for defendant;" and also, at the request of appellant, instructed the jury: "If you believe from the evidence that Fred High went into an oil tank with a lighted torch, and that it was dangerous so to do, and that he knew of such danger, or could have known it by the exercise of ordinary care, or should you believe that such danger was one that was open to the knowledge or observation of any man of ordinary intelligence, and notwithstanding such danger, said High went into said tank with a lighted torch, and was killed by an explosion of gas therein, then you will find for defendant, although you should believe from the evidence that defendant ordered High to go into said tank, and did not warn him of such danger."

The court further instructed the jury, at the request of appellant, as follows: "The jury are instructed, that in the event you believe from the evidence that the danger of entering the oil tank by the deceased was obvious and patent to the observation of a reasonable and prudent man, then and in that event your verdict should be for the defendant; and in this connection you are instructed, that all persons are presumed to be reasonably cautious and prudent until the contrary is shown." It is thus seen that every principle of law embodied in the rejected charges was submitted to the jury, and that it would have been superfluous, if not error, for the court to have given them.

As the principles of law embraced in the twelfth and thirteenth special charges asked by appellant, so far as applicable to the facts in this case, were substantially submitted to the jury in the court's gen-

eral charge and special charges given at the instance of appellant, it was not error in the court to refuse them.

It is strenuously urged by appellant that the court erred in instructing the jury, that "a vice-principal is one who is intrusted by the company with the authority to superintend, control, or command other persons employed by the company, or with the authority to direct any other employe in the performance of his duty;" and that "all persons who are engaged in the common service of a railway company, and who are in the same grade of employment and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by the company with any authority to control or direct the other in the performance of his duty, are fellow servants;" and in refusing to charge the jury, at appellant's request, "that the deceased, Fred High, and the young man Faulk, who were by the foreman Kelly sent to plug the sand hole in the oil tank, were fellow servants, and that the plaintiff can not recover for or on account of any negligence of Faulk that may have caused Fred High's injuries."

The definition given by the court of a vice-principal and fellow servant are substantially as defined by statute. In our opinion there would have been more reason in the court's instructing the jury that, in the particular work being done by the parties, Faulk was a vice-principal, than in charging them that he was High's fellow servant, for by the undisputed testimony of all the witnesses on the subject, Faulk was intrusted with superintendence and control over High, with authority to direct him in the performance of the particular job of work in hand. But whether their relation was that of fellow servants was a question of fact to be determined, from all the evidence, by the jury under proper instructions from the court; and in our opinion, it would have been clearly erroneous to have withdrawn the question and have peremptorily instructed the jury as requested by appellant; and that the question was submitted in an appropriate charge.

The court in its general charge instructed the jury as follows: "And you are charged, if you believe that Kelly and Faulk were vice-principals of the defendant company, intrusted with authority to direct High in the performance of the work in repairing a leak in the tank, and that Kelly and Faulk knew, or ought to have known by the exercise of ordinary care, that it was dangerous to enter the tank with a lighted lamp, and that they did not warn High of such danger; and you further believe that High did not know it was dangerous to enter the tank with a lighted lamp, and could not have ascertained such danger by the exercise of ordinary care and diligence, and that Faulk directed High to enter the tank, knowing that he would do so with a lighted lamp, and that High did enter, in obedience to the orders of Faulk, and that the flame of the lamp came in contact with the gases of the tank, causing an explosion thereof, which was the occasion of his death, then you will find for plaintiff; but if you believe that

High entered the tank by direction of Faulk, and that Faulk and High were fellow servants as defined in paragraph 5 of this charge, then you are instructed that the plaintiff can not recover, and you must find for the defendant; or if you believe that High was under the direction of Faulk only when required by Kelly to assist Faulk, and that he directed High to proceed to do other work, and that High, either voluntarily or by direction of Faulk, left the work required of him by Kelly and undertook to assist Faulk in repairing the leak, then plaintiff can not recover, and you will find for the defendant; or if you believe that High knew that there was oil in the tank, and that by the exercise of ordinary care he ought to have known of the danger of entering it with a lighted lamp, then you will find for the defendant."

The twenty-first assignment of error, which complains of this paragraph of the charge, does not specify or indicate any error at all, and should not, therefore, be considered. Rev. Stats., art. 1037; Hill v. Railway, 80 Texas, 435; Lambert v. Williams, 2 Texas Civ. App., 415. If, however, the objections to the charge asserted in appellant's proposition under this assignment, which are, "that it invades the province of the jury, is upon the weight of evidence, and groups certain facts and circumstances and tells the jury if they so believe they will find for plaintiff, or vice versa, for defendant," had been specified so as to require consideration, we should hold none of them well taken. The charge, in our opinion, is a full, clear, and accurate application of the law to the various phases of the evidence as presented by the respective parties. It is in accordance with the method adopted by the appellant in drafting the special charges it asked in this case, which has received the unqualified commendation of our Supreme Court. Conwill v. Railway, 85 Texas, 96.

The fifteenth assignment of error, which complains of the verdict as excessive, we believe is well taken. When the age of appellee, her expectancy of life, the earnings of her deceased son, and the amount thereof received by her, are considered, we do not think she was actually damaged by his death exceeding $3000.

There being no other error requiring a reversal, if the appellee will enter a remittitur in this court of $3000, within twenty days from this date, the judgment of the District Court will be affirmed; otherwise, it will be reversed and remanded.

*Affirmed, remittitur having been entered.*

Delivered, October 10, 1894.