## H. R. THOMPSON v. PLANTERS COMPRESS COMPANY.

Decided December 14, 1907.

**1.—Master and Servant—Vice Principal—Personal Injuries.**

In a suit by a vice-principal against his principal for personal injuries received while operating a gin-stand, evidence considered, and held sufficient to support a finding that the plaintiff was guilty of contributory negligence and assumed the-risk which resulted in his injury.

**2.—Contributory Negligence—Erroneous Definition—Harmless Error.**

A charge defining contributory negligence considered, and held erroneous but harmless in view of other portions of the charge which correctly applied the law to the facts.

**3.—Assumed Risk—Knowledge of Danger.**

Where the plaintiff bases his claim for personal injuries on the ground of defective machinery, it is not error for the court to instruct the jury as matter of law that he cannot recover if he knew at the time of the injury that the machinery was defective and dangerous.

**4.—Contributory Negligence—Assumed Risk—Confusing Charge.**

Where, in a suit for personal injuries, facts existed which would relieve defendant from liability, either on the ground of contributory negligence or the assumption of the risk, a charge which confused the two doctrines would not be cause for reversal of the judgment in defendant's favor.

**5.—Defective Machinery—Assumed Risk—Charge.**

Where the parts of a machine are so intimately connected that they constitute and may be considered as a whole, and the evidence showed that only certain parts were defective and not the whole machine, a charge upon the doctrine of assumed risk which instructs the jury that if they believe the machine was defective, etc., to find for the defendant, was not misleading.

**6.—Invited Error.**

Where the charge of the court upon the burden of proof was erroneous but a special charge given at the request of the appellant contained the same error, the appellant cannot complain in the absence of anything in the record showing that the special charge was given after the main charge.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*J. A. Stanford,* for appellant.

*Alexander & Thompson,* for appellee.

RAINEY, CHIEF JUSTICE.—H. R. Thompson sued defendant, appellee, for personal injuries, in the District Court of Johnson

County, alleging that plaintiff was injured at defendant's gin in the city of Cleburne while operating a roll-breast to the gin-stand; that his injuries were due to the negligence of defendant in that the knuckles attached to the roll-breast and the grooves into which they fit were badly worn, were defective and too loose and wholly unfit for use, by reason of which plaintiff's hand was caught in the saws of the gin and mutilated, to his damage in the sum of two thousand dollars.

Defendant answered plaintiff's petition with a general denial, and with the plea that at the time and place in question plaintiff was the superior representative of this defendant in the immediate charge of said machinery; that he was familiar with same, having been in charge of it for a number of years; that it was his duty as foreman to take notice of the condition of the machinery and appliances, and if the same became defective or out of repair, it was his duty to repair the same, or in case the repairs were of such a nature that he as foreman could not make, it was his duty to report the same to the superintendent. Defendant specially plead that plaintiff assumed the risks incident to the handling of the machinery in the condition in which it was, and that such injuries as he received were caused proximately by his own want of care in the use and operation of the machinery.

A trial before a jury resulted in a verdict and judgment for the appellee, from which an appeal was taken.

Complaint is made that the verdict is contrary to the evidence, because the defects in the gin-stand, which were the proximate cause of the injury, were unknown to plaintiff and were not open and patent to observation. The evidence shows that defendant's gin plant has four gin-stands, that they were what was known as the Munger gin-stands. That each gin-stand was about four feet long and each stand had what was known as a huller board in front, which was a plank or board about four feet long and about eighteen inches wide. This board was placed in an upright position. The roll-breast was about four feet long and was semi-circular in form and on the ends of the roll-breast were castings that were all the way around the circular end of said roll-breast and extended about six inches above the upper edge of said roll-breast and at the end of the castings on each end of the roll-breast there was a knuckle attached to the upper end of each of said castings the size of a man's finger and extending off from said casting at right angles, and these knuckles fit in grooves that were cut in the edges of the sides of the gin-stand, and said roll-breast was supported or hung by said knuckles which fit in the grooves, and when said roll-breast was in position it would stand or hang in almost an upright position. When the roll-breast was in place there was a space of about five inches between the huller board and the roll-breast and it was about eighteen inches from the top of the huller board to the lower edge of the roll-breast. About four inches from the lower edge of the roll-breast and near each end was a hand-hold. Back of the roll-breast, and some four or five inches back from the roll-breast, was the gin saws. Under the roll-breast at each end, and some

four inches above the lower edge of it, was what was known as the lugs. These lugs were projections from the smooth surfaces on each side of the gin-stand, and put there to hold up the roll-breast and to keep it from falling down on the gin saws. Each end of the five inch space between the huller-board and roll-breast was closed up. The two sides of the gin-stand were surfaces that fit up snugly to the ends of the roll-breast, just giving it room enough to work back and forth. The knuckles at the end of the castings on the end of the roll-breast and the grooves into which they fit were in plain view, but when the roll-breast was in position the castings could not be seen, except that part extending above the roll-breast, and the lugs could not be seen at all, except when the roll-breast was removed. It was plaintiff's duty to watch the gin-stands and see that they were receiving and ginning the cotton properly, to keep them oiled, and in case the gin-stands got choked up to unchoke them and he would do this by putting his hand down between the huller board and roll-breast and take hold of the hand-hold on the lower edge of the roll-breast and move the roll-breast back and forth and cause the seed to fall out. The company had inspectors who came around occasionally and inspected the machinery and repaired anything that needed repairing. Sometimes they would come around once a month and sometimes not more than two or three times during the ginning season. During the summer of 1905, and before the gin started up about September 1, 1905, the company's inspector came here and remained about ten days inspecting and repairing the gin machinery. They were supposed to have given the entire gin plant a thorough inspection and general overhauling and to have repaired everything that needed repairing.

H. R. Thompson testified on direct examination as follows: "We began the operation of the plant about 1st of September, 1905, and on the 21st of September, 1905, the gin-stand next to the press became choked up with cotton seed. I put my left hand down between the huller-board and roll-breast and took hold of the hand-hold and began moving it back and forth to make the seed fall out, when the knuckles at the upper end of the castings flew out of the grooves and caused the roll-breast to roll back on my arm and the lower part of the roll-breast passed the lugs that were designed to hold it up off the saws and caused my hand to be carried right in on the saws. The cause of my hand coming in contact with the saws was the roll-breast passed the lugs. My hand could not have been caught on the saws if the lugs had been long enough to hold the roll-breast up off the saws, but the lugs were defective in that they were so worn off that they were too short and allowed the roll-breast to pass them. At the time I was injured I was trying to unchoke the gin-stand in the same way I had always done it before. In fact, I was doing it in the only way it could be done. I could not use both hands without taking off the huller board. Three of my fingers were cut off and the front finger so mangled as to make it stiff. I have never known of the roll-breast passing the lug before. I did not know that the lugs were defective. Did not know they were worn off and too short. Did not

know that said machinery was in any way defective, and I was acting in a careful and prudent way and was doing the work just like I have always done it before, and the only way I could do it."

On cross-examination he testified as follows: "I have had about twelve years' experience running gin-stands. At the time of this injury I had been operating the gin-stand for the past three seasons. During this time I had charge of the four gin-stands of the defendant. The defendant had six or seven men employed in its plant at Cleburne. Mr. Ready was the superintendent. He came to Cleburne, I think, about the 8th of August, as well as I remember. He took charge and employed me to continue on here. I don't think he had been here previous to that time. As manager he had entire charge here; looked after the office work; made his office in the little frame building on the ground. These gin-stands were on the second floor. He would come up here once in a while; I don't remember his missing a day. I suppose I know as much about the gin-stands as he did. We had an engineer and fireman and two suctions feeders. I had been cleaning out the gin-stands about three weeks, as well as I remember, at the time of the injury, that season. This diagram that you present to me correctly shows the appearance of the gin-stands, with the huller-breast and roll-breast off. I don't remember how many times I had the breast off that season, from the beginning up to the time I was hurt. I have not any idea, and could not give an estimate. I do not know whether I had it off a dozen times or not. I could not say. I do not know whether I had it off at all or not. Yes, I have had it off during the time I worked there, but I can not say I had it off a dozen times during that season. I do not know whether I had it off at all, or not, during that season. Sometimes a wad would collect in between the ribs, and I would have to take them off and get the wad out. A man will have to take them off once in a while to remove these wads. I was attempting to operate the inside breast at the time I was hurt. It rests on a socket, or rather on lugs on the ends. It is hung on knuckles, attached to the end of the roll-breast. There are hand-holds on the roll-breast; they are about four inches from the bottom of the breast. I don't see how a man could use both hands in that close place. I never could. I think I have tried it. I had my hand in the hand-hold when it was caught. The breast turned over and the bottom went in and caught my hand. I did not have hold of the lower edge of the breast at the time I was caught, but had hold of the hand-hold. I knew Mr. Lawson, the traveling inspector, did not live there, but I was expecting that he would be back during the season. I never saw him from the time I commenced work up to the time I was hurt. There was no one there at the time to find defects except myself. My knowledge as to the construction of the gin-stand depends upon what I knew at the time. I have had no additional experience or observation. I don't believe I knew anyone in Cleburne that knew as much about that gin-stand as myself at that time. I am not satisfied that anyone in Cleburne knew as much about it as myself; I don't know who all was here. I never had any trouble with this gin-stand before, in

taking the breast off, and in unchoking it. The condition was such if a man was looking for it he would find it. I did not know what time Mr. Lawson was coming. He sometimes came when he was not called. I don't know that with my knowledge in the operation of that gin I would have acquired more information about it than one coming in casually inspecting it. I don't suppose I am an expert ginner. The saws struck the lower edge of the breast and cut it up some. I don't know that it is a fact that when you take hold of the ends of the breast and shake it, that it has a tendency to throw the knuckles out of socket. I have done that many times the same way. I am working at the Santa Fe shops now for $1.70 a day, ten hours' work. You commence at a certain place there and work up. That work extends all through the year. My employment with defendant was just through the ginning season. I am bonus timekeeper with the Santa Fe. My right hand was not hurt."

Y. S. Ready testified as follows: "My name is Y. S. Ready. I am superintendent of a gin plant at Lewisville, Texas, but am not in the employment of defendant. At the time plaintiff was injured I was superintendent of defendant's gin plant at Cleburne, Texas, and first took charge there in August of that year. I employed plaintiff as ginner for that season. It was plaintiff's duty to run the gin-stands, to look after the gin-stands, keep them oiled, keep them unchoked, to see that they were ginning the cotton properly, to look out for any defects that would prevent the gin-stands from properly ginning the cotton, and to repair any defects that he might discover, if he could, and if he could not, then to report to me. He was in a better position than any of the other employes about the gin plant at the time he was injured, to know what was was the true condition of the gin-stands. The company had no inspectors here at the time plaintiff was hurt. The inspectors had not been here since some time in the summer, I think about June, previous to the time plaintiff was hurt, about September 21. We started up that season about September 1. Plaintiff was present at the time we started up, and I suppose he saw how the machinery started off. I was in the office at the time plaintiff was hurt, and the first I knew of it was when he came to the office with his fingers mangled. There were no repairs made on the gin-stand that hurt plaintiff during that season. We run the stand the remainder of that season without any repairs being made. I run it myself a part of the time. I tried the roll-breast several times afterwards, to see if it would pass the lugs, and I found it would not. The two hand-holds at the bottom of the roll-breast are put there for the purpose of taking hold of to move the roll-breast, up and down, to make the seed fall out. The proper way to unchoke it is to take hold of both hand-holds to move it, up and down. I took the roll-breast off several times while I run it. With the breast off, the lugs are plainly to be seen. The knuckles and grooves were open, and if they were worn, such condition was plainly to be seen, but I had no trouble with the breast whatever. If you take hold

of only one hand-hold, it has a tendency to jerk the breast, like pulling the drawer of a dresser by one hold thereof."

John L. Chase testified, in substance, that he was a gin repairer, repaired the gin mentioned in June, 1905, and left it in first-class condition, did not inspect the gin in September, 1905, nor until the spring of 1906, did not live in Cleburne at that time.

Under the foregoing facts the jury were justified in rendering a verdict for the defendant. They were warranted in finding that plaintiff was negligent in handling the roll-breast, which contributed to his injury. He had charge of the gin and it was his duty to look out for defects and he assumed the risks of being injured in the manner he was. The testimony conflicts as to the existence of any defect, but it was sufficient for the jury to find that none existed.

The court, in defining contributory negligence, charged the jury as follows: "Contributory negligence, as used in this charge, means that where the plaintiff does some negligent act or omits to perform some act co-operating with some negligent act or omission on the part of the defendant, contributes to and is the proximate cause of the injury." This charge is assigned as error. In the case of Selman v. Gulf, C. & S. F. Ry. Co., 101 S. W. Rep., 1030, we held such a charge error and reversed the case. While the charge in this case is error, yet, in view of another paragraph of the court's charge, it becomes harmless.

The eighth paragraph of the court's charge reads: "On contributory negligence you are instructed that it was the duty of the plaintiff during the time he was in the employment of the defendant company to use such care and prudence as a reasonably prudent person would have exercised under the same circumstances to prevent any injury to himself, and as to what ordinary care was under the circumstances, is for you to determine, taking into consideration all the facts and circumstances surrounding and known to the plaintiff at the time of his alleged injury. You are instructed that if the plaintiff knew that said roll-breast of the said gin-stand, as to said lugs and as to the cast-iron on the end of the same, were so worn as to make them defective and dangerous at the time he undertook to use the same, then in law he is guilty of contributory negligence and can not recover; and if the plaintiff in using said roll-breast did so in a negligent manner, and by the way in which he used the same the accident was caused, then in that event the plaintiff would be guilty of contributory negligence and could not recover, and if you so find, your verdict should be for the defendant." This paragraph of the charge applied the law to the facts and pointed out to the jury specifically the facts, if found true, upon which they could find plaintiff guilty of contributory negligence. So the definition of contributory negligence being an abstract proposition, though incorrect, was not calculated to influence the jury where, as in this case, their minds were directed by the court to the specific facts that would constitute contributory negligence. The court's charge must be construed as a whole and defects in one paragraph that by another paragraph are rendered

harmless, will not be cause for reversal. Gulf, C. & S. F. Ry. Co. v. Carter, 71 S. W. Rep., 73; Texas & N. O. Ry. Co. v. Scott, 71 S. W. Rep., 26.

But the appellant insists that the eighth paragraph of the court's charge as above quoted is error and presents the following propositions: That it instructs that plaintiff would be guilty of contributory negligence as matter of law, if he used the roll-breast knowing that the lugs and castings were so worn as to be defective and dangerous. 2. Said paragraph of the court's charge is erroneous in that it confuses and confounds the lugs with the roll-breast, when the lugs are no part of the roll-breast and in no way connected with it. 3. Said paragraph of the court's charge is erroneous in that it confuses the doctrine of assumed risk and contributory negligence.

As to the first proposition, the plaintiff basing his claim for a recovery on the ground of defective machinery, it was not error for the court to tell the jury that as a matter of law he could not recover if he knew at the time that it was defective and dangerous. 2d. There could be no confusion in the use of the words, roll-breast and lugs, as used. It is true the lugs were not attached to the roll-breast, but were placed to prevent the roll-breast dropping down in its operation and in that sense are so connected that as used by the court could not have been misleading to the jury. 3d. The confusing of the doctrine of assumed risk and contributory negligence could not have misled the jury. If the facts existed, whether constituting assumed risk or contributory negligence, the plaintiff could not recover, and the use of one for the other should not cause a reversal. Horton v. Ft. Worth Packing Co., 76 S. W. Rep., 211.

The third assignment of error presented is as follows: "If you find from the evidence that the plaintiff at the time of his injury knew that the said roll-breast to the said gin-stand was at that time defective and dangerous, or if he must necessarily have known such fact in the ordinary discharge of his duties, then in such case the plaintiff in attempting to use said roll-breast to the said gin-stand, with such knowledge, would in law assume the risk of being injured thereby, and in that event your verdict should be for the defendant company. On the other hand, if you find that the plaintiff at said time did not know of said defect, if you have found that the same was defective, or that in the ordinary discharge of his duties he did not necessarily acquire such knowledge, then in that event you should find for the plaintiff on the issue of assumed. risk." The proposition is: Where there are two or more defects in machinery and the servant knows of one, but does not know of the others, he does not assume the risk of being injured by reason of the unknown defects.

The evidence, we think, shows that in the construction of the roll-breast, the lugs, knuckles and castings were all necessary for its proper operation, and had such intimate connection with it as to be considered a part of it. The words "use of said roll-breast"

in the charge embraced all the parts, and therefore the jury were not misled. Besides, the charge is as favorable. to plaintiff as to defendant, for it tells the jury to find for plaintiff on this issue if he did not know of the defect. So, according to plaintiff's contention, if either defect was unknown, the plaintiff could recover.

The complaint is made that the court erred in its charge where, in effect, the burden was placed on plaintiff to show that he was not guilty of contributory negligence and did not assume the risk before he could recover. The plaintiff can not avail himself of this error, because he requested a charge involving the same language, and therefore it is invited error, the record failing to show that said special charge was requested after the court had given its charge. International & G. N. Ry. Co. v. Sein, 89 Texas, 63.

There was no error in the court refusing special charge No. 1 requested, because the court had embodied it in substance in the main charge. The court did not err in charging upon assumed risk, as complained of. The judgment is affirmed.

*Affirmed.*