SOUTHWESTERN STATES PORTLAND CEMENT CO. v. RISER.

(Court of Civil Appeals of Texas. Dallas. May 6, 1911. Rehearing Denied May 27, 1911.)

1. MASTER AND SERVANT (§ 201*)—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT—PROXIMATE CAUSE OF INJURY.

Where a scaffold on the outside of the wall of a building in process of erection was connected by ropes with a scaffold on the inside of the wall, so that the safety of the men on one of the scaffolds depended on the manner of operation of the other scaffold, the act of a servant on the inside scaffold in untying a rope to lower the scaffold whereby the outside scaffold was precipitated to the ground, and plaintiff, who was working thereon, was injured, was not the proximate cause of the injury, where the master was negligent in failing to furnish sufficient materials to properly construct the scaffolds and in failing to warn the servants on the inside scaffold of the fact that the two scaffolds were connected together.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

2. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—FELLOW SERVANT—VICE PRINCIPAL.

A servant to whom the master has delegated the duty of constructing scaffolds to be used in the erection of a building, and of superintending the shifting of the scaffolds, and of giving orders to the men in that respect, was a vice principal as to the men working on the scaffolds, and for his negligence resulting in injury to one of the men by the fall of the scaffold the master was liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

3. MASTER AND SERVANT (§ 189*)—DUTY TO SERVANT—SUPERINTENDENCE—VICE PRINCIPAL.

Where a master places a servant in charge of certain work and confers upon him the authority to control and direct other servants, who are placed under him, with instructions to obey his orders and directions in the performance of such work, such superior servant, in giving orders and directions to servants under him, represents the master, and negligence of such servant, while in the performance of such duties, is the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–448; Dec. Dig. § 189.*]

4. COURTS (§ 90*)—JUDICIAL PRECEDENTS—EFFECT OF PENDENCY OF WRIT OF ERROR.

It is not improper for the Court of Civil Appeals to cite a decision of that court as a precedent, though a writ of error on such decision is pending and undetermined in the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–321, 351; Dec. Dig. § 90.*]

5. MASTER AND SERVANT (§ 294*)—INJURIES TO SERVANT — CONCURRING NEGLIGENCE—INSTRUCTIONS.

In an action against a master for injuries to a servant, it was not error to instruct that if any fellow servant of plaintiff failed to exercise ordinary care for his safety on the occasion of his being injured, and that such failure proximately caused plaintiff to be injured, then you will find for the defendant unless such failure concurred with the negligence of the defendant, and unless such concurring negligence proximately caused plaintiff's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1162–1167; Dec. Dig. § 294.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by R. J. Riser against Southwestern States Portland Cement Company. From the judgment for plaintiff, defendant appeals. Affirmed.

Appellee was in the employment of appellant as a laborer in the construction of a rock storage plant. On the 13th day of May, he, together with a fellow servant, was engaged in riveting sheeting to the side of the structure. In the course of the work the men used two scaffolds, each consisting of a piece of board suspended on the opposite sides of a wall of the structure by ropes fastened to projections from the top of the wall. Appellant did not furnish said scaffolds in a completed state to said workmen, but furnished the boards and the ropes, and the same were constructed by them according to their own judgment. Appellee stood on a scaffold on one side of the wall, and a fellow servant by the name of Dulaney stood upon the scaffold on the other side. Separated by the wall they were out of sight of each other, but together were engaged in the common work of "bucking rivets" and fastening sheeting to the side of the structure. They had finished a particular portion of the work and it then became necessary to take down the scaffolds. Dulaney first started to take his down, and in order to let the same to the ground, began untying the ropes by which his board was suspended, causing one end of the scaffold upon which Riser was standing, to fall, precipitating him to the ground and injuring him. The scaffolds were erected by one Harrell, who superintended the putting on of the sheet iron. Suit was filed by R. J. Riser to recover damages for injuries alleged to have been sustained by said fall. Plaintiff in his petition alleged that his injuries were the direct and proximate result of the negligence of the defendant, in that the said defendant and its offi-

---

cers, agents and servants, failed to furnish and provide and failed to exercise ordinary care to furnish and provide proper and necessary material and equipment to support, maintain, and erect said swinging scaffold or plank—that is, so that it might be securely fastened independent of the other scaffold —and without having the same rope extend from it to the other of said scaffolds, and in that they failed to exercise ordinary care to securely fasten at the top the rope supporting the said swinging scaffold or plank, and failed to exercise ordinary care to fasten the same to a part of the building by a rope or other support which did not extend to said other scaffold, and failed to exercise ordinary care to have the same so fastened that they would remain securely fastened until plaintiff had performed his duties as aforesaid, and failed to exercise ordinary care to warn, and failed to warn plaintiff and the said other workmen doing similar work as to the manner in which said plank was fastened and supported. A trial resulted in a verdict and judgment for the plaintiff, Riser, in the sum of $1,999.99, and defendant duly perfected an appeal.

### Conclusions of Fact.

In May, 1909, R. J. Riser was in the employ of the Southwestern States Portland Cement Company and engaged in assisting in putting sheeting or siding on a certain building located at the plant of said company near Eagleford, in Dallas county, Tex. He was on a swinging scaffold on the outside of said building about 35 or 40 feet from the ground. This scaffold was composed of a plank 2x12 inches and 20 feet long, which was suspended and supported by ropes extending above and from over a piece of truss work made of steel, from which extended a 6x10 piece of scantling, on which the roof was to be nailed. This piece of scantling extended about one foot over the edge of the steel truss, the rope being fastened on the inside to the scantling and extending over the truss on the outside, and there being fastened to the board on which Riser was standing when he fell. There were two scaffolds on which to stand, one being on the inside of the building and one on the outside hung in such a manner as to form a loop through which the tackle was hung, and the scaffold on which the men worked was raised or lowered by pulling on the ropes extending through and fastened in the pulley, which was fastened to said loop. These scaffolds had been constructed by Harrell, assisted by another employé called Jim. Harrell testified that, "about the time they had finished putting on this tier of siding I told both Dulaney and Riser that we would move both scaffolds to the next place where we were to work. Riser was standing at the far end of the scaffold when it fell. Dulaney was on the scaffold on the inside. I told Riser to go out to the other end, and I would let one end of the

scaffold down and he could let his end down. This he did, and when he was at the other end and unfastening the tackle so it could be let down, the scaffold fell with him; that is, he had just unfastened the end and given me enough line to hold to, and had started to the other end of the scaffold when it fell. I had just told him that he had enough slack, and to go to the other end of the scaffold and unloosen it, when it fell, and I had no conversation with him. When they finished work Riser was on the end of the scaffold near the outside of the building. After the siding had been put on I instructed Dulaney to let the scaffold down on the inside. When I gave him my instructions, he was standing in my view on the truss, and as soon as he was instructed to let his scaffold down, he disappeared from my sight." He also testified: "I had authority over Riser and Dulaney in their work and they were compelled to obey my orders. I had ordered them to do the sheeting which was done just before Riser was hurt. I had three scaffolds altogether under my control, including the one on which Riser was working; one was on the inside and one on the outside; these were the ones Dulaney and Riser were using, and there was one on the roof which was being used to do rivet work with. The rope which was fastened or tied to the upper part of the building, which supported the ropes leading to the scaffold, was about six or eight feet long and was about one and one-fourth inches in diameter. When I swung these scaffolds I had six of such pieces of rope under my control; I mean there were eight in all, and only six pieces on the work Riser and Dulaney were on. There were four of the ropes fastened to the scaffold boards and two of them to the 6x10 scantling. Before I swung the scaffolds I went to Mr. Bartholomew and asked for lashings to swing them on, and he sent me to Mr. Bailey, another straw boss, Mr. Bartholomew being over both Mr. Bailey and me. Bailey gave me some and said he gave me all he had to spare. I received some ropes from Mr. Bailey, but don't know how many; I got all that he could spare. After I got the ropes I had eight slings and lashings and I think I got my tackle from him also. Six of those ropes were used by Dulaney and Riser and the other two were used by the men working on the roof. I talked with Mr. Hodgson and Mr. Bartholomew and Bailey about furnishing me ropes with which to swing the scaffolds. Hodgson was a foreman of equal authority with Mr. Bartholomew. I would always go to Mr. Bartholomew, who would tell me to go to Bailey and sometimes would send me to Hodgson. It was Bailey's business to take care of the ropes as he had the locker. They were taken care of by being put in a locker inside of the building. I had no locker under my control. Mr. Bartholomew gave me instructions to do the work on the building that had just been done before Riser was

hurt. I told Mr. Bartholomew that I did not have enough ropes to swing my scaffolds, and he told me to go to Mr. Bailey or Mr. Hodgson and get what I wanted from him. I had no other knowledge as to where to get materials for the scaffolds than I have already stated." Harrell was employed by one Bartholomew, who was authorized to employ and discharge, and who instructed Harrell as to his duties. Harrell was foreman of the sheet iron gang at the time Riser received his injuries. His duties were to instruct and superintend the putting on of the sheet iron. Dulaney testified: "Just as we had finished I heard Harrell, who was our straw boss, immediately in charge of this crew, tell us to take down the scaffold." Again, "At the time Riser was hurt the men in my crew received orders from Mr. Harrell, and it was my duty, and the duty of the men in the gang, to obey such orders as he gave. J. A. Harrell was subforeman, and directed our gang in their work." Again "Harrell had always told us to take down our scaffolds and I heard him give such instructions. It was my duty to take down the sling from the inside; Riser was to take it down from his side." O. B. Bartholomew testified: "I am general foreman for the company, the Southwestern States Portland Cement Company. I had authority to hire and discharge men. Harrell did not have authority to hire and discharge me. He was just superintendent of that kind of work, putting on corrugated iron; he was just looking after the three men it took to do that work."

The appellant did not furnish sufficient rope and lashings for the erection of the scaffolds. The act of Harrell in directing Dulaney and Riser to lower their scaffolds without first informing them that both scaffolds were suspended from the same rope was that of a vice principal of appellant, and was negligence.

Harry P. Lawther, for appellant. Carden, Starling, Carden & Hemphill, for appellee.

BOOKHOUT, J. (after stating the facts as above). [1] It is contended that the court erred in refusing to instruct a verdict for defendant. The evidence shows that the appellant was guilty of negligence in failing to furnish Harrell, who erected the scaffolds, sufficient ropes and lashings to hang the same with separate ropes and lashings, and for this reason it was necessary to hang both scaffolds from the same ropes. The case was tried on the theory that the company was negligent in failing to furnish Harrell sufficient ropes to enable him to safely hang the scaffolds, and that such negligence caused the injuries to Riser, and that appellee and Harrell were fellow servants. Appellant here contends and argues that, if appellant was negligent in this respect such negligence was not the proximate cause of the injuries to appellee, but his injuries proximately resulted from untying the rope suspending the scaffold upon which Riser had been at work. If it be conceded that this argument is sound and that the negligence of the company in failing to furnish sufficient material to enable the scaffold to be properly constructed was not the proximate cause of the injury, but the untying of the rope by Dulaney which suspended the scaffold was the primary cause, still we are of the opinion that the act of Harrell in erecting the scaffolds and in directing the untying of the ropes, knowing that both Riser and Dulaney were ignorant that both scaffolds were suspended by the same ropes and that the untying of one would result in both falling, without warning them of this fact, constituted negligence for which the appellant was responsible.

[2, 3] It was the duty of the master to furnish its servants a reasonably safe place in which to perform their duties. Harrell superintended the erection of the scaffolds and gave the order to Dulaney and appellee to lower them. At the time of giving this order Harrell was superintending the shifting of the scaffolds and both Dulaney and appellee were compelled to obey his orders. Harrell, in erecting the scaffolds and in superintending their shifting and in giving the order to lower the same, was a vice principal and in the performance of a nondelegable duty. Where a master places a servant in charge of certain work and confers upon him the authority to control and direct other servants, who are placed under him, with instructions to obey his orders and directions in the performance of such work, such superior servant, in giving orders and directions to servants under him, represents the master, and negligence of such servant, while in the performance of such duties, is the negligence of the master. Railway Co. v. Wise, 101 Tex. 465, 109 S. W. 112; Young v. Hahan, 96 Tex. 99, 70 S. W. 950; Quinn v. Lumber Co., 126 S. W. 3; Abilene Cotton Oil Co. v. Anderson, 41 Tex. Civ. App. 342, 91 S. W. 607; Mexican Nation Ry. Co. v. Finch, ⊙ Tex. Civ. App. 409, 27 S. W. 1028; Bering Mfg. Co. v. Femelat, 35 Tex. Civ. App. 36, 79 S. W. 870; Fogarty v. St. Louis Transfer Co., 180 Mo. 235, 79 S. W. 665, and cases cited; Mosher Mfg. Co. v. Boyles, 132 S. W. 492; Lantry-Sharpe Co. v. McCracken, 117 S. W. 453.

[4] We are aware that a writ of error has been granted in the Lantry-Sharpe Case, last above cited, but as the Supreme Court has not finally passed upon the case we do not regard it improper to cite it.

[5] It is assigned that the court erred in giving to the jury special charge requested by the plaintiff, as follows: "If you find and believe from the evidence that any fellow servant or fellow servants of plaintiff failed to exercise ordinary care for his safety on the occasion of his being injured, and that such failure or failures, if any, proximately caused plaintiff to be injured, then you will find for the defendant unless such failure or failures, if any, concurred with the negli-

gence, if any, of the defendant, as hereinbefore defined, and unless such concurring negligence, if any, on the part of the defendant proximately caused plaintiff to be injured.' This assignment is presented as a proposition. The charge complained of announced a correct proposition of law, and the giving of the same does not constitute reversible error. Labatt on Master & Servant, 2250; Standard Oil Co. v. Brown, 218 U. S. 78, 30 Sup. Ct. 669, 54 L. Ed. 939; Railway Co. v. Wise, 106 S. W. 470; Id., 101 Tex. 459, 109 S. W. 112.

Finding no reversible error in the record, the judgment is affirmed.