LOWREY v. FITZHUGH et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 13, 1913.)

1. MASTER AND SERVANT (§ 189*)—INJURIES TO SERVANT—FELLOW SERVANT—VICE PRINCIPAL.

Where a servant working with plaintiff, and by whose negligence plaintiff was injured,

had authority to direct and control plaintiff, but had no authority to employ or discharge the employés with whom he was working, he was not a vice principal, but a fellow servant, except with reference to nondelegable duties, if any, with which he had been invested by the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

2. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—SAFE PLACE.

The rule requiring a master to furnish his servant with a safe place to work does not apply where the servant is working on a structure in the course of erection, which is undergoing constant changes in passing through successive temporary conditions, many of which must from the very necessity of construction be dangerous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—SCAFFOLDING—SAFE PLACE TO WORK.

Plaintiff, while assisting in the construction of a water tower, was injured by the fall of a plank that was being used in the erection of scaffolding. The scaffolds were temporary, and the planks constituting the staging were unfastened, owing to the fact that they were raised from a lower to a higher level, as the work progressed upward, as often as every 30 minutes or every hour, being placed only for temporary use. The manner of erecting the scaffolds was left to the men engaged in the work, and it was not shown that the plan of construction was defective or was the cause of plaintiff's injury, nor that the servants or materials furnished were unfit. *Held*, that defendant was not negligent in failing to furnish plaintiff a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by C. C. Lowrey against P. A. Fitzhugh and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Greer & Nall and T. H. Bowers, all of Beaumont, for appellant. Smith, Crawford & Sonfield, of Beaumont, for appellees.

McMEANS, J. Appellant, C. C. Lowrey, plaintiff in the court below, brought this suit against the appellees, P. A. Fitzhugh and the Beaumont Cotton Oil & Refining Company, defendants, to recover damages for personal injuries sustained by him while in the employment of defendants. The case was tried before a jury, and at the conclusion of the trial an instructed verdict was returned for the defendants, upon which a judgment in their favor was accordingly entered, and from which the plaintiff has appealed.

The evidence in the record justifies the following findings of fact: The defendants were raising several buildings or structures, among which was a water tower. They had a large number of persons employed in this work, the plaintiff being among the number, he being employed as a helper. The day before he was hurt he was directed to work on the water tower. D. F. Faust, an em-

ployé, had charge of the plans and specifications which had been prepared by defendant Fitzhugh and was foreman of this job, and as such had the authority of superintendence, control, and command of the plaintiff and the other employés working with him. Faust himself worked with the others in the construction of the tower. The others so engaged, besides plaintiff and Faust, were A. L. Taylor, a carpenter, and Rado Janes, a negro, who was a helper. This water tower had four pillars, one at each of its corners, upon which the main structure rested. From each corner a square post was set up in lengths of 20 feet. Horizontally at every 10 feet in height the posts were braced with similar timbers, and also with cross-sectional or x-braces diagonally. At every 10 feet temporary scaffolding or stage planks were placed across the corners on the inside of the tower, reaching from one horizontal brace to another. This was done for a walkway for those working at an elevation, and when one 10-foot height of bracing work was completed this staging or platform was carried from the lower up to the next 10-foot level. These platform planks were not fastened or nailed down because they had to be moved from one elevation to the one next above as often as the upper elevation was constructed to receive them, which was from 30 minutes to an hour. The matter of making these platforms safe for the men engaged on the work was left to the men themselves. At the time plaintiff was injured, he and Faust were attempting to hoist a piece of bracing timber up to Taylor to nail in place about 20 feet above them. The method of hoisting was as follows: A pulley was attached to a bean above the 20-foot level. A rope ran through this pulley with both ends reaching to the ground. A piece of bracing timber was tied to the rope for hoisting. This piece of timber was on the ground outside of the tower, and Faust and plaintiff, by his direction, were pulling on the other end of the rope from the inside. Almost immediately after they began pulling on the rope, it came in contact with one of the stage planks on the 20-foot level, dislodging it and causing it to fall, and in falling it struck plaintiff and injured him severely. The afternoon before they had put up three sets of these braces; and the stage planks were moved one time that afternoon. Plaintiff helped to put on the lower braces. He handed them up, but did not remember whether it was Faust or Taylor he handed them to. Later they were moved to the second brace. Before going to work with Faust and Taylor on the water tower, plaintiff had worked at different parts of the construction work. He had assisted in weatherboarding the lintroom and other walls of the building where scaffolding was being used as the work progressed from the ground. On these scaffolds stage planks for the men

to walk on were used, and they were securely nailed down as a precaution against danger to those engaged in that work. Plaintiff refused to say whether he believed at the time that the stage plank which fell upon and hurt him was nailed down or otherwise made fast.

The charge of the court simply instructed the jury to return a verdict for defendants, and it cannot be gathered from the charge or the verdict the particular reason which actuated the court in so instructing them. It may be that, upon review of the facts as above stated, the court was of the opinion that no actionable negligence of the defendants or of any vice principal of theirs is shown. While appellant by his assignments of error undertakes to negative many supposable reasons for the giving of the charge, he does not undertake to negative the theory that the court decided that the facts disclosed no such negligence.

By his first and second assignments of error appellant complains, in effect, that the court erred in giving the peremptory charge referred to, for the reason that his original petition stated a good cause of action. All we need say in disposing of these assignments is that it sufficiently appears that the court did not give the charge upon the theory that the petition was bad on demurrer. The record shows that a general demurrer was urged, but overruled. If after this the court had changed its mind as to the sufficiency of the petition and felt impelled to change his ruling and sustain the demurrer, no doubt this would have been done in such a way as to afford appellant an opportunity to amend.

The third and fourth assignments are as follows: Third. "The court erred in instructing a verdict for defendants on the theory that Faust (defendants' employé) was a fellow servant with plaintiff." Fourth. "The court erred in instructing a verdict for the defendants, in that Faust was a vice principal, having control and direction over plaintiff in the performance of his duties at the time of his injuries."

[1] It is not pretended that Faust had the authority to employ and discharge the employés with whom he was working in the erection of the water tower. Appellant, however, contends that the authority conferred upon Faust to direct and control plaintiff in the discharge of the duties he was performing when hurt made him a vice principal of defendants, even in the absence of the power to employ and discharge, and, in support of this contention, cites McCracken v. Lantry-Sharpe Contracting Co., 45 Tex. Civ. App. 485, 101 S. W. 520, Southwestern States Portland Cement Co. v. Riser, 137 S. W. 1188, and Williams v. Kirby Lumber Co., 136 S. W. 1182. In the case first cited, the late Associate Justice Eidson of the Austin Court of Civil Appeals in criticising the charge given in that case, to the effect that if a serv-

ant was in charge of the construction of a rock-crusher plant, and had authority to direct the details of the work, and of the workmen engaged upon the work, but had no authority to hire and discharge, then such servant would be under the law a fellow servant of the plaintiff, and defendant would not be liable for his negligence, said: "There is testimony in the record tending to show that Bruce was placed by appellee in charge of the work which was being performed at the time appellant received the injuries upon which this suit is based, and that he was given by appellee authority to control and direct the hands placed under him to assist in the performance of the work, and such hands were instructed to obey his orders and directions; that appellant was one of the hands placed by appellee under said Bruce, and that he received injuries while in the performance of his duties and obeying the orders of the said Bruce, and that the proximate cause of said injuries was an order given by the said Bruce in the course of said work, and the giving of said order was negligence. We think this testimony tends to show that at the time appellant sustained his injuries Bruce had authority to perform, and was then in the actual performance of, the duties of appellee (the master), and that his negligence would be the negligence of the appellee." A decision on a second appeal of this case will be found in 53 Tex. Civ. App. 627, 117 S. W. 453. On this appeal Associate Justice Hodges of the Sixth Court of Civil Appeals lays down this rule: "One who is empowered by the master to direct and control the operations of other employés is unquestionably in some respects the representative of the master in the exercise of that authority, and when acting as such is in law a vice principal as to those over whom he is given such supervision [citing authorities]. * * * A mere foreman, without power to employ and discharge, may therefore be a vice principal when directing the operations of other employés over whom he exercises supervision, and a fellow servant as to such employés when co-operating with them in the performance of their duties." In both appeals the judgments of the trial court were reversed and the cause remanded. The case was appealed a third time, and a report of the conclusions reached on this appeal is found in 134 S. W. 363. On this appeal Associate Justice Jenkins of the Austin Court of Civil Appeals stated the rule here under discussion as follows: "Where one is placed by the master under the control of another, and told to obey his instructions, the orders given by such other in relation to the work in hand are the orders of the master, without reference to the grade which he otherwise holds in such service. In such case the power to employ or discharge is not necessary." This rule was adopted by the Dallas Court of Civil Appeals in South-

western States Portland Cement Co. v. Riser, 137 S. W. 1188, where Associate Justice Bookhout states the rule in substantially the language of Justice Jenkins, and cites, among other cases, that of Lantry-Sharpe Contracting Company v. McCracken. The Supreme Court granted a writ of error in the Lantry-Sharpe Case reported in 134 S. W. 363, and in deciding the case overruled the decisions rendered by the Courts of Civil Appeals in that case, and in effect overruled the case of the Cement Company v. Riser, supra. In an opinion delivered November 27, 1912, 150 S. W. 1156, not yet officially published, Associate Justice Dibrell, after reciting the facts, states the law to be as follows: "In determining who are vice principals and fellow servants in cases of the status of the one at bar, we are relegated to the common law. A careful investigation of the common law, and especially as it has been understood and promulgated by the Supreme Court of this state, reveals the ruling to be that, in order to constitute an employé a vice principal of the master, he must be clothed with the power to hire and discharge in addition to his authority to direct and command his coemployés in the work being performed. We think it may be safely and correctly stated that no case can be found where our Supreme Court has recognized an employé as a vice principal who has not in the performance of his duties towards his employer exercised or possessed the power of hiring and discharging in connection with his authority to control and direct the action of his coemployés, except as hereinafter qualified. It may be stated with equal accuracy that no ruling of this court extending over the period of more than half a century can be found sustaining a judgment for damages for personal injuries caused by the negligence of an agent of a person or corporation, where such agent was not authorized to employ and discharge his coemployés, except in instances where such negligence related to those duties of the master which are regarded as nonassignable and nondelegable, such as furnishing the servant a reasonably safe place to work, or reasonably safe instruments with which to perform the services, or the selection of careful and competent coemployés, etc. Of course, this has no reference to railroads or street railways since the statutes have defined who are fellow servants and who are vice principals, as regards those corporations. It is true a contrary doctrine has been established in many other states, and so have many textwriters of substantive law laid down a doctrine at variance with that here adhered to. But it is the unquestioned doctrine of the Supreme Court of this state that, before the negligence of a servant is attributable to his principal in the class of cases in question, such servant in connection with his authority of control must possess the authority to employ and discharge his coemployés. With-

out such power to employ and discharge added to such assignable and delegable duties as the principal may make, he cannot be regarded as a vice principal, and his negligence is that of a fellow servant only." Again, after quoting the language of Judge Jenkins, as copied above he says: "We are unable to reconcile the doctrine thus announced with that so clearly established as hereinbefore set out, which amounts to saying that an agent cannot be regarded as the vice principal of the master, unless the authority to employ and discharge those under him is coupled with the authority to control and direct such employés. This doctrine properly analyzed means that an employé or agent possessed of authority to control, direct, and command other employés is not a vice principal of the master, nor is an employé or agent the vice principal of the master because he is given the authority to employ and discharge without the power to control and direct, but to constitute such an agent a vice principal he must be clothed with the joint authority to control and direct and to employ and discharge. If this be true, and it seems to us indisputable, then the two doctrines are hopelessly irreconcilable. We are inclined to think Mr. Justice Jenkins has unintentionally omitted an important qualification to the doctrine announced in the above excerpt from the court's opinion. If the statement there made is limited to those duties of the master owing to the servant, which under the law the master has no right to delegate to another, the statement of the law would be in harmony with that of this court upon that subject. As heretofore stated, the only exception to the general proposition of what is required in this state to constitute an agent of the master a vice principal, the power to control coupled with the power to hire and discharge, is that such agent invested with authority to control and direct those under him becomes a vice principal in respect alone to those duties delegated to him that are in law regarded as nondelegable."

We think that, under the law as construed by our Supreme Court, Faust was not a vice principal of appellee, and the court did not err in instructing a verdict for defendant on the theory that he and plaintiff were fellow servants. This being true, plaintiff assumed the risk of injuries that might result to him through the negligence of Faust, and, if Faust was guilty of negligence which proximately caused the injuries complained of by plaintiff, the latter cannot recover.

[2, 3] We will discuss but one other point. Were defendants guilty of actionable negligence in failing to furnish plaintiff a safe place in which to work? We understand that the rule requiring the master to furnish to his servant a safe place in which to perform his work has no application where the servant was at work, as was appellant, on a structure in the course of erection, which is

undergoing constant changes in passing through successive temporary conditions, many of which must from the very necessity of construction be dangerous. As before shown, the plaintiff and three of his coemployés were erecting a water tower, and in doing the work it became necessary for them to erect scaffolds to stand upon. These scaffolds were temporary, and the planks constituting the staging were raised from a lower to a higher level, as the work progressed upward, as often as every 30 minutes or every hour. Being placed for only temporary use, they were not nailed down or otherwise made fast. The manner of erecting the platforms was left to the men engaged in the work. It does not appear that the plan of construction was defective, or had anything to do with plaintiff's injury, nor were the servants or materials furnished shown to be unfit. By the authority of the following cases we hold that the defendants cannot be held to have been guilty of actionable negligence in failing to furnish appellant a safe place in which to work. Allen v. Railway Co., 14 Tex. Civ. App. 344, 37 S. W. 171; Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710; Adams v. Consumers' Lignite Co., 138 S. W. 1178; Armour v. Hahn, 111 U. S. 318, 4 Sup. Ct. 433, 28 L. Ed. 440; Maughmer v. Bering, 19 Tex. Civ. App. 299, 46 S. W. 917.

Finding no reversible error in the record, the judgment of the court below is affirmed.

Affirmed.