GRACE & HYDE CO. v. KENNEDY.

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

No. 56.

1. MASTER AND SERVANT—SAFE PLACE TO WORK.

A master was building a shed over the width of the sidewalk in front of a building in a city. Twenty-six foot posts were placed on the inside and on the outside of the sidewalk, on which were fastened wooden girders parallel with the street, and boards were nailed on such girders. The work was done at night, in consequence of the public use of the street in the daytime. Two derricks were used, which were secured by guy lines, some of which ran across the street, where they were secured. About 5 a. m. a wagon struck against one of the guys, which threw plaintiff's servant from the top of the post on which he was standing, and to which he was spiking a girder. *Held*, that the master cannot escape liability under the rule that the duty of the master to provide safe places does not apply where the place originally furnished is safe, and becomes unsafe in the progress of the work, or because of the manner in which the work is done, since it cannot be said that the place (the street) originally furnished was safe unless it was protected by danger signals or watchmen.

2. SAME.

Work was done at night on a structure where guy ropes were run into and across the street. A wagon of a third person ran against one of the ropes, which caused plaintiff to fall from where he was working on the structure. There were no lights or watchmen in the street near the ropes. *Held*, that the fact that when the workmen on the job began work sufficient appliances in the way of lamps were furnished does not exonerate the master within the rule that when the working place originally, and when the employé was sent to do the work there, was reasonably safe, but became unsafe at the particular time of the accident by causes that could not have been anticipated, the master is not liable, since the place could not be considered reasonably safe when the workmen began their night's work unless an adequate system was adopted for their protection against dangers easily to be anticipated.

3. SAME—WEIGHT AND SUFFICIENCY OF EVIDENCE.

The usual practice as to guarding obstructions at night in the streets of a city where men were at work was to place red lamps on the obstruc-

tion, or to employ a watchman. A master had provided four red lanterns, two of which had been broken before the night of the accident, and the other two had been placed on that night at one obstruction, but there were none on the obstruction which a third person encountered, thereby injuring a servant. The evidence as to whether a watchman had been designated to give warning was conflicting. *Held*, that the question of whether the obstruction was sufficiently protected was for the jury.

4. SAME—ASSUMPTION OF RISKS.

A servant does not assume the risk of the employer's neglect to furnish a reasonably safe system of protection against the danger from injury by passing vehicles coming in contact with guy ropes extending from the place where the servant is working out into and across the street.

In Error to the Circuit Court of the United States for the Southern District of New York.

Chas. C. Nadal, for plaintiff in error.

Gilbert D. Lamb, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Daniel Kennedy, an employé of the Grace & Hyde Company, a corporation, brought an action at law in the circuit court for the Southern district of New York against his employer to recover damages for the injuries caused by its alleged negligence, and recovered a verdict for $2,500. To review the judgment which was entered upon the verdict this writ of error was brought.

The defendant, in the month of August, 1897, was building a shed or barricade over the width of the sidewalk in front of the Grand Central Depot, on the east side of Vanderbilt avenue, in the city of New York. The sidewalk was about 12 feet wide, and the barricade, of about 26 feet in height, consisted of two rows of upright posts,—one row along the wall of the depot, and the other along the outer edge of the sidewalk,—upon which were fastened wooden girders parallel with the street, and upon the girders a covering of boards was nailed. In consequence of the extent of the public use of the street in the daytime, the work was done at night. These posts were 10 feet apart. Two derricks, one on the inside of the sidewalk and the other on the outside, were used to place the posts and girders in position, and each derrick was secured by two back guy lines and one head guy. At the time of the accident the inside derrick was secured by a head guy line running down to the stair rail of the basement stairs of the depot. The other two lines ran across the street. One was fastened to a lamppost at the corner of Forty-Third street and Vanderbilt avenue, and the other was fastened to a hydrant. These two lines had been secured across the street from the time of the commencement of the work. To a large beam in the street between the east curb and the car track one of the guys of the outside derrick had been fastened from time to time. The work began at Forty-Fourth street, and the derricks were moved forward from time to time in order to place the posts and girders in position, and when they were moved the position of the guys was changed. At about half past 4 or 5 o'clock in the morning of August 19, 1897, a mail van, which was coming through Van-

derbilt avenue from the depot yard to Forty-Second street, struck against one of the guys of the inside derrick, caused it to sway over, and one of the ropes threw Kennedy from the top of the post on which he was standing, and to which he was spiking a girder. He was thrown upon the sidewalk, and his kneecap and one arm broken. The case was presented to the jury by the plaintiff upon the theory that, inasmuch as the work was necessarily done at night, upon a street which was frequently occupied by passing vehicles of various kinds, and as the necessary guy ropes which extended into the street must be fastened where they were in danger of collision with a passing vehicle, if unobserved in the darkness by the driver of the vehicle, it was the duty of the defendant to take such precautions against injury to his employés as to render the place of their work reasonably safe. The court charged upon the duty of the defendant as follows:

"Did the defendants fulfill their duty, which was to provide what was reasonably safe and proper by way of precaution from such a thing as this mail wagon, or anything of that sort, coming along? If they did,—did everything that was reasonable in that behalf,—you may return a verdict for the defendants, because, if they did, that is enough. That is all they were required to do."

The defendant insists that the rule of law which directs the master to provide his servant "with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged" (Railroad Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 40 L. Ed. 944), is inapplicable, because the street was a safe place, and the rule as to safe places does not apply when the place originally furnished is safe, and becomes unsafe in the progress of the work, or because of the manner in which the work is done. The argument rests upon the incorrect assumption that the place originally furnished was safe. The place was an avenue extensively used for travel, in which a substantial shed was to be erected at night by the use of derricks secured by ropes stretching somewhere in the avenue. It was eminently unsafe unless protected either by danger signals or watchmen. It is said, however, that when the workmen began work sufficient appliances in the way of lamps were furnished, and that it became unsafe by the way in which the work was done. This subject was considered by this court in Baird v. Reilly, 35 C. C. A. 78, 92 Fed. 884. in which, after saying that an employer cannot escape responsibility for injuries to an employé by alleged failure to make the working place reasonably safe, by proof that he had furnished a competent foreman with necessary appliances and needful instructions, the court said:

"When, however, it appears that the working place originally, and when the employé was sent to do the work there, was reasonably safe, but became unsafe at the particular time of the accident by causes that could not have been anticipated, by exigencies created in carrying on the details of the work, or by the neglect of a fellow servant, a different rule is applicable."

The facts of the case do not bring it within the exceptions. The place could not be reasonably safe when the workmen began their night's work unless an adequate system was adopted for their protection against dangers which were easily to be anticipated; nei-

ther did danger spring out of sudden exigencies, or sudden neglect or mistake of a foreman or workman. The negligence, if it existed, arose from the insufficiency of the means for the protection of the workmen which were originally adopted. Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464.

The defendant's assignments of error seek to introduce into the case the doctrine of nonliability for an injury caused by a co-servant, and it is urged that the danger was created by the workmen themselves; for it did not appear that there was a necessity for tying the guy lines on the other side of the street, and that occasion for warning or signals arose only in consequence of the act of the men in thus extending the ropes. The defect in the argument is a continuance of the omission to recognize the ordinary necessity for the protection of the employés, and that the absolute duty of the master to provide a safe place is not avoided by the neglect of his representative or servants to do the things which will obviously prevent the known original danger. Howard v. Railway Co. (C. C.) 26 Fed. 837; Railroad Co. v. Peterson, supra. In regard to the fact of the insufficiency of the means of protection, competent testimony was introduced to show that the usual practice with respect to guarding obstructions at night in the street where men are at work is to place red lamps upon the obstructions, or to employ a watchman for the purpose of warning against the danger. Baird v. Reilly, supra. The defendant had provided four red lanterns. Two of these had been broken before the night of the accident, and the other two were on that night placed one upon each end of the beam on the street which has been spoken of, but there were none upon the guys of the injured derrick. There was also testimony upon the part of the plaintiff that no person had been specially designated as a watchman to give warning to drivers of vehicles, and upon the part of the defendant that the foreman and another person attended to this service in addition to their other duties. The conflict of evidence on the subject was sufficient to compel the submission of the question to the jury.

The subject which is contained in the defendant's assignment of error that the plaintiff assumed the risk of his position and of the conditions as they existed was fully considered in Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, and it is sufficient to say that the plaintiff did not assume the risk of the employer's neglect to furnish a reasonably safe system of protection against the danger from injury by passing vehicles, and that there is no adequate evidence that he continued to remain at work with the knowledge of the insufficiency of the protection which was actually furnished. The judgment is affirmed, with costs.