## STANDARD OIL COMPANY *v.* BROWN.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 168.    Argued April 22, 25, 1910.—Decided May 31, 1910.

While the pleadings and proofs should correspond, a rigid exactitude is not required, and no variance should be regarded as material where the allegation and proof substantially correspond.

Even if there is a variance between declaration and proof, if, as in this case, defendant is not misled, makes no objection to plaintiff's proof but replies to it by testimony of like kind, is familiar with the facts, does not indicate the variance and does not move for continuance, the variance cannot be regarded as fatal.

The extent of the knowledge of a defendant employer as to the use made of appliances by an employé by whose act another employé is injured and the conclusions to be drawn therefrom are questions for the jury and cannot be reviewed here.

The substitution of "would" for "could" in an instruction to the jury in this case *held* not to have affected the minds of the jurors.

In this case there was no reversible error because the court did not impress upon the jurors the fact that interest may affect credibility of witnesses; and, *quære* whether a party testifying exercises a privilege which may be emphasized as affecting his credibility.

31 App. D. C. 371, affirmed.

The facts are stated in the opinion.

*Mr. A. Leftwich Sinclair* and *Mr. Joseph J. Darlington,* for plaintiff in error:

To entitle a plaintiff to go to the jury, the evidence

offered in support of his pleadings must conform closely to the allegations thereof. 13 Ency. Pl. & Pr. 910, and cases cited; *Hetzel* v. *Railroad Co.,* 7 App. D. C. 524; *Arrick* v. *Fry,* 8 App. D. C. 125.

Where a plaintiff has charged particular negligence, proof of other and different acts or omissions as a ground of liability will constitute a fatal variance. *Shanke.* v. *U. S. Heater Co.,* 125 Michigan, 346; *Brown* v. *Miller,* 62 S. W. Rep. 547; *Railroad Co.* v. *Shockman,* 52 Pac. Rep. 446; *Waldhier* v. *Railroad Co.,* 71 Missouri, 514; *Pennington* v. *Detroit &c. R. Co.,* 90 Michigan, 505; *Marquette R. R. Co.* v. *Marcott,* 41 Michigan, 433; *Batterson* v. *Railroad Co.,* 49 Michigan, 184; *Alford* v. *Dannenberg,* 177 Illinois, 331; *Railroad Co.* v. *Foss,* 88 Illinois, 551; *Railroad Co.* v. *Mock,* 72 Illinois, 141; *Railroad Co.* v. *Collins,* 118 Ill. App. 270; *Long* v. *Doxey,* 50 Indiana, 385; *Curren* v. *Railroad Co.,* 86 Missouri, 62; *Ischer* v. *Bridge Co.,* 95 Missouri, 261; *Sayward* v. *Carlson,* 1 Washington, 29; *Brown* v. *L. & L. Co.,* 65 Mo. App. 162; *Thomas* v. *Railroad Co.,* 35 S. W. Rep. 910; *Pryor* v. *Railroad Co.,* 90 Alabama, 32; *Railroad Co.* v. *Guyton,* 36 So. Rep. 84; *The Elton,* 142 Fed. Rep. 367; Labatt, M. & S., § 859, note 1 (*a*).

There is a fatal variance where the evidence, instead of proving the tort alleged, proves or tends to prove another tort. 14 Ency. Pl. & Pr. 336; 22 Ency. Pl. & Pr. 568.

Where there is no evidence sustaining counts in a declaration as to the defendant's negligence, he is entitled to an instruction that no recovery can be had under the counts. *Mining Co.* v. *Fulton,* 205 U. S. 60.

Persons standing in such a relation to one another, as did the plaintiff and Coleman, are fellow-servants. *Railway Co.* v. *Dixon,* 194 U. S. 338; *Railroad Co.* v. *Conroy,* 175 U. S. 323; *Railroad Co.* v. *Poirier,* 167 U. S. 49; *Oakes* v. *Mase,* 165 U. S. 363; *Railroad Co.* v. *Keegan,* 160 U. S. 259; *Railroad Co.* v. *Hambly,* 154 U. S. 349; *Railroad Co.* v. *Baugh,* 149 U. S. 368; *Tuttle* v. *Milwaukee Ry. Co.,* 122

U. S. 189; *Randall* v. *Railroad Co.*, 109 U. S. 478; *Elevator Co.* v. *Neal*, 65 Maryland, 438; *Wonder* v. *Railroad Co.*, 32 Maryland, 411; *Adams* v. *Iron Cliffs Co.*, 78 Michigan, 271; *Hogan* v. *Railroad Co.*, 49 California, 128.

One who enters into the employment of another takes upon himself the ordinary risks of the negligent acts of his fellow-servants in the course of the employment. *Railway Co.* v. *Dixon, supra; Railroad Co.* v. *Conroy, supra; Railroad Co.* v. *Poirier, supra; Railroad Co.* v. *Keegan, supra; Railroad Co.* v. *Baugh, supra; Tuttle* v. *Milwaukee Ry. Co., supra; Randall* v. *Railroad Co., supra; Carter* v. *McDermott*, 29 App. D. C. 145; *Looney* v. *Railroad Co.*, 24 App. D. C. 510; *Wonder* v. *Railroad Co., supra; Md. Clay Co.* v. *Goodnow*, 95 Maryland, 330; *Moret* v. *Car Works*, 99 Maryland, 461; *Railway Co.* v. *Conrad*, 62 Texas, 627; *Hogan* v. *Smith*, 125 N. Y. 774.

A man of mature age, offering himself to pursue a particular employment, who represents himself to have had the necessary experience, cannot after an injury be heard to say that he should have been instructed by his employer in the performance of his duties. *Hayzell* v. *Railroad Co.*, 19 App. D. C. 359, 369; *Railway Co.* v. *Clark*, 108 Illinois, 113; *Regan* v. *Palow*, 62 N. J. L. 30; *Sumey* v. *Holt*, 15 Fed. Rep. 880; *Railroad Co.* v. *Boland*, 96 Alabama, 626; *Railroad Co.* v. *Barry*, 56 U. S. App. 37; *Martin* v. *Railroad Co.*, 166 U. S. 403; *Randall* v. *Railroad Co., supra.*

The duty to instruct and warn as to dangers arising from the execution of the general details of the work is generally held to pertain to the duties of the servants as between themselves, so that a failure or negligence in regard thereto is that of a fellow-servant, exempting the master from liability. 26 "Cyc." 1338, 1339; *Miller* v. *Railroad Co.* (N. J.), 31 Am. & Eng. R. R. Cases, N. S., 639; *Jenkins* v. *Railroad Co.*, 39 S. C. 507; *Moret* v. *Car Works*, 99 Maryland, 471; *Kemmerer* v. *Railroad Co.*, 81

Hun, 444; *Hussey* v. *Coger,* 112 N. Y. 614; *Cullen* v. *Norton,* 126 N. Y. 1; *Potter* v. *Railroad Co.,* 136 N. Y. 77; *Melchert* v. *Brewing Co.,* 140 Pa. St. 448; *Zurn* v. *Tetlow,* 134 Pa. St. 213; *Allison Mfg. Co.* v. *McCormick,* 118 Pa. St. 519; *Keats* v. *Nat. Heeling Mach. Co.,* 65 Fed. Rep. 940; *Railroad Co.* v. *Smithson,* 45 Michigan, 212; *Kohn* v. *McNulta,* 147 U. S. 238.

*Mr. Creed M. Fulton* and *Mr. W. Gwynn Gardiner,* with whom *Mr. A. E. L. Leckie* and *Mr. Joseph W. Cox* were on the brief, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This action was brought in the Supreme Court of the District of Columbia for damages for injuries alleged to have been received by defendant in error while in the employment of plaintiff in error and through its negligence.

The case was tried to a jury, which rendered a verdict in favor of the defendant in error in the sum of $6,500, upon which judgment was duly entered. It was affirmed by the Court of Appeals.

The assignments of error are based on certain instructions asked by the company which the trial court refused to give, the chief of which requested the court to direct the jury to find a verdict for the company upon the following grounds: (1) There was a fatal variance between the pleadings and the proof. (2) The injury to defendant in error was not caused by the negligence of the company, but by the negligence of a fellow-servant or his own contributory negligence.

The first ground is the principal one discussed by counsel, and turns upon a consideration of the declaration and the proof.

An outline of the facts contained in the opinion of the Court of Appeals is as follows:

"The plaintiff entered the employ of the defendant in January, 1904, as an. oil tank wagon driver. His duties required him to take a team and wagon from defendant's barn in the morning, and, after using it during the day in the delivery of oil, return it to the barn in the evening. The plaintiff was required to groom his team in addition to his duties of delivering oil. The barn in which the horses were kept was thirty feet wide and fifty feet long. It contained two rows of stalls, one on either side, with a space of twelve feet between, extending the full length of the barn. In the ceiling, above the space between the stalls and about the middle of the barn, there was an opening four feet square, surrounded on the floor of the loft above by a wooden enclosure or box about four feet high. In the loft was stored baled straw, which was used for bedding the horses.

"It further appears that for about nine years one Coleman had been employed by the defendant, and among his duties was that of bedding the horses; that, during the period of his employment, Coleman had been accustomed to throw bales of straw through the opening in the ceiling from the loft to the floor below. In doing so it was necessary to lift the bale up to the top of the box or enclosure in the loft and push it over, so that it would fall through the opening. Plaintiff received the injuries complained of February 2, 1904, by being struck by a bale of straw dropped by Coleman from the loft through said opening.

*       *       *       *       *       *       *       *.

"There was evidence adduced at the trial to show that plaintiff had never been advised by the defendant, or any of defendant's employés, either of the existence of the opening in the ceiling or the purpose for which it was used. Plaintiff testified to this effect, and further, that during the period of his employment—less than two weeks—he was required to leave the barn with his wagon

to deliver oil at 6 o'clock in the morning, and that he did not complete the delivery of the oil and return to the barn until 6 or 7 o'clock in the evening. At the time of year that he was employed—in January—he left the barn before daylight in the morning and returned after dark in the evening. It also appears that the barn was poorly lighted, there being but a small oil lamp at each end of the passageway between the stalls.

"The witness Coleman testified that he not only notified plaintiff of the use made of the opening in the ceiling, but warned him before throwing down the bale of straw that injured him."

Defendant in error denied "that Coleman either called his attention to the hole, or explained its use, or gave him any warning on the evening of the accident. Coleman is not corroborated by any of the employés, as to his custom of calling out to persons below before throwing straw through the opening."

The declaration contained four counts, in the first three of which, with some verbal variations, it is alleged that it was the company's duty to have the "hole or opening" in the ceiling of the stable so guarded that the bales of hay in the loft above would not fall or pass through and fall upon defendant in error or upon those engaged in the performance of their duties in the stable. This duty, it is alleged, was neglected, and a bale of hay was allowed to fall through the hole on the defendant in error.

Those counts may be dismissed from consideration, as defendant in error does not contend that the proof corresponds to them.

The fourth count, it is insisted, has such correspondence, and expresses the grounds upon which the case was tried. The following are the pertinent allegations of that count:

"It became and was also the duty of the said defendant not to permit the said hay and feed to be thus passed through the said hole or opening without proper warn-

ing or timely notice to those employed in the stable below . . . . and to give its employés engaged in handling or placing the hay and feed as aforesaid, as well as to those who were employed in the stable below, such proper and necessary instructions with respect to the dangers of passing the hay and feed through the said hole or opening, and the performance of their respective duties as to prevent injury and danger to the lives and limbs of the employés engaged in the stable below, yet the defendant . . . did not . . . do any of the duties that it was called upon to discharge in the premises, but, wholly disregarding its said duties in the premises, did carelessly and negligently allow a bale of . . . . hay to fall or pass, or be thrown through the said hole or opening, without any notice or warning or signal or instruction of any kind to plaintiff," etc.

The rule is familiar and elementary that the pleadings and proof must correspond, but a rigid exactitude is not required. In *Nash* v. *Towne*, 5 Wall. 689, 698, it is said that modern decisions in regard to the correspondence between the pleadings and the proof are more liberal and reasonable than former ones, and states the rule to be by statute in the Federal courts "to give judgment according to law and the right of the cause." It was observed that "it is the established general rule in the state tribunals that no variance between the allegations of a pleading and the proofs offered to sustain it shall be deemed material, unless it be of a character, to mislead the opposite party in maintaining his action on merits." The final comment of the court is that irrespective of those statutes, however, no variance ought ever to be regarded as material where the allegation and proof substantially correspond. See also *Liverpool and London and the Globe Ins. Co.* v. *Gunther,* 116 U. S. 113; *B. & P. R. R. Co.* v. *Cumberland*, 176 U. S. 232, 238.

In the case at bar the company could not have been

misled. It made no objection to the testimony of the
plaintiff (defendant in error here). It replied to it by
testimony of like kind. It did not indicate in what way
the proof varied from the pleadings nor move for a con-
tinuance. Moreover, we think the pleadings, though in-
artificially drawn, were sufficient to notify the company
that one of the grounds of action was its omission of duty
to inform those whose employment made it necessary to
be in the stable of the danger to them of the use to which
the hole was put. And that such use was dangerous is
demonstrated. Indeed, it should not have needed the ex-
perience of the present case to make the danger clear to
the company. The company was familiar with the stable,
its construction and what that construction required.
One just employed might not know either, and his time of
service might keep both from his knowledge. And such
is the contention in this case, which the verdict of the
jury sustained. A dimly lighted stable before daylight
and a dimly lighted stable after daylight, with a hole in
its ceiling through which bales of hay could be tossed or
dropped, seems to us as not to fulfill the duty of a master
to those servants who have not been informed of the prac-
tice and the performance of whose duties subjected them
to the danger which might result. Let it be granted that
Coleman was a fellow-servant of defendant in error and
was negligent, it was nevertheless for the jury to say
whether the fault of the company contributed to the in-
jury. *Kreigh* v. *Westinghouse, Church & Kerr Co.,* 214
U. S. 249. If the plaintiff had had knowledge of the
situation and its dangers he might have needed no warn-
ing from Coleman, and might have been protected by the
care which such knowledge would have induced.

The negligence of a fellow-servant was sought to excuse
the master for his neglect in *Grace & Hyde,* v. *Kennedy,*
99 Fed. Rep. 679, *S. C.,* 40 C. C. A. 69. In reply to it the
court said, by Circuit Judge Shipman:

"The defect in the argument is a continuance of the omission to recognize the ordinary necessity for the protection of the employés, and that the absolute duty of the master to provide a safe place is not avoided by the neglect of his representative or servants to do the things which will obviously prevent the known original danger."

In the discussion so far we have assumed that the company had knowledge of the use to which Coleman had put the hole. Counsel, however, attacks the assumption, and meets it by saying that the company could not anticipate that Coleman would throw down an unopened bale of straw without giving warning to his co-employés, especially, as it is further urged, he had been throwing down straw through the opening without negligence for about six years. But what the facts were in such regard and what conclusions were to be drawn from them were for the jury and cannot be reviewed here.

Error is assigned upon the refusal of the court to give instructions, which presented the following propositions: (1) That the company was not an insurer of the safety of defendant while in its employment, "nor of the absolute or even reasonable safety of its stable." (2) That the presumption of law is that plaintiff contracted with reference to the risks, hazards and dangers ordinarily incident to the business of his employment as the company conducted it at the time he entered its services. And that (this was an independent instruction) the salary or compensation received by the defendant in error was the consideration for such risks. (3) There was no evidence that Coleman was incompetent and that his competency must be presumed.

It is not necessary to give a detailed attention to these instructions. The court in its charge to the jury expressed the legal principles of the case which were applicable to the testimony.

The company also asked another instruction, the sub-

stance of which was as follows: That defendant in error assumed the ordinary risks not only actually known to him, but so far as they *could* (italics ours) have been known to him by the exercise of ordinary care on his part, and that if he knew, or by the exercise of care and prudence *could* have known, of the existence of the hole then he could not recover. The court gave the instruction, but substituted the word "would" for "could."

The court was further requested to instruct the jury that they must look to the interest of the witnesses, and that where a witness is interested "the temptation is strong to color, pervert or withhold the facts." An application was made of this to defendant in error and it was requested that the jury be told that the law permitted him to testify in his own behalf, and that he having availed himself of the privilege, it was for them to determine how far his testimony was credible, and that his personal interest should be considered in weighing his evidence and in determining how far it was worthy of credit. The instruction was refused.

But little comment is needed on the contention that there is reversible error in the action of the court. It would be going very far to reverse the judgment on the supposition that the jury would have seen a different meaning in the word "could" than they saw in the word "would" and in consequence would have imputed a greater knowledge to defendant in error of the risks of his employment. And it would be going equally far to reverse the verdict because the jury did not have especially impressed on it, in the language counsel chose to employ, that interest may affect the credibility of witnesses. We are not prepared to say that a party to an action by testifying exercises a privilege which may be emphasized as affecting his credibility.

*Judgment affirmed.*