IVERSON, Appellant, v. LOOK, Respondent.

(143 N. W. 332.)

1. **Trial—Special Interrogatory—Materiality of—Evidence to Support.**

In a suit for injuries to a servant, a special interrogatory, submitting the question whether plaintiff, when injured, was of ordinary intelligence, discretion, and judgment, similar to other people of like age and experience, was gratuitous and improper, since no evidence to contrary appearing in the record, it would be so presumed.

2. **Instructions—Evidence to Support—Contributory Negligence—Inference of Negligence.**

Where, in an action for injuries to a servant by having his hand drawn into a sausage machine, there was no evidence of plaintiff's negligence except such as might be inferred from the accident itself, it appearing that defendant directed plaintiff to operate the machine, that he had seen defendant operate it, and that plaintiff operated it in exactly the same manner in which he had seen defendant do it, **held**, error to submit the issue of contributory negligence to jury. **Held**, further, that the inference of contributory negligence, arising from the happening of the accident itself, is not a legal one, and cannot be indulged in any case.

3. **Instructions—Contributory Negligence—Submission to Jury.**

Contributory negligence on the part of an injured servant is an affirmative defense, and before it can be submitted to the jury it must be supported by some evidence that, at the time of the accident causing injury, plaintiff was not exercising proper care in performance of his duties.

4. **Master and Servant—Injuries to Servant—Servant's Care—Instruction.**

In an action for injuries to a servant, an instruction that it

was plaintiff's duty to exercise ordinary care in protection of himself in performance of his work, and if his want of care "contributed in any degree, however slight," to his injury he was guilty of contributory negligence precluding recovery, was erroneous, as requiring too high a degree of care, since to avoid negligence, "however slight," requires exercise of the highest degree of care and attention.

5.   Contributory Negligence—Misleading Instruction.

Where plaintiff sued for personal injuries caused by getting his right hand drawn into a sausage machine while putting through a mixture liable to clog and stick to his hand, to prevent which he was required to dip his fingers into water at hand for that purpose and, while pressing down the material in the hopper with that hand, to feed parts of the mass into the machine with his other, held, that, it being necessary to a certain degree, in order to do the work, that his attention be diverted from pressing the meat into the hopper with his right hand to that of feeding the meat with his left after dipping his fingers, an instruction that, if his want of care contributed in any degree, however slight, to the injury, he was guilty of contributory negligence, was misleading and confusing to the jury.

6.   Injuries to Servant—Danger "Incident"—Risk "Assumed"— Instruction.

Plaintiff, suing for personal injuries while operating a sausage machine, alleged he did not know or appreciate the danger "incident" to operation of the machine, while the jury was instructed that his pleading was that he did not know or appreciate the danger he "assumed" by feeding the machine by hand. Held, the instruction was erroneous, as misleading jury to believe that plaintiff, by accepting the employment, had, as matter of law, assumed the risk incidental to operation of the machine.

7.   Extent of Assumed Risk—Instruction.

An instruction that if defendant was negligent in failing to provide safe machinery for plaintiff to work with, or in failing to instruct or warn him as to dangers incident to his employment, if any, or in failing to inform plaintiff of a safe method of operating the machine by which he was injured, if there was a safer way than that employed, then the jury could not find that plaintiff assumed the risk, unless they found he knew the danger, or that it was so obvious that he ought to have known it, was erroneous, as failing to define the extent of knowledge and understanding that plaintiff was required to possess before he could be held, as matter of law, to have assumed the risk; the extent of such assumption depending on extent of such knowledge.

8.  **Same—"Assumed Risk."**

An assumed risk is one the servant necessarily had in mind when he entered into his employment contract.

9.  **Obvious Risk—Appreciation of Danger.**

The obvious risk which, as a general rule, a servant assumes, does not arise from mere knowledge that the employment is more or less dangerous; he must be found to have understood and appreciated the nature and extent of the danger incurred.

10. **Same—Assumed Risk—Question for Jury.**

In an action for injuries to servant by getting his hand caught in a power sausage machine as he was pressing down the material in the hopper, evidence held to require submission to jury of question whether plaintiff, who had previously run a hand machine, appreciated the increased danger of defendant's machine by reason of the fact that he had no control over the motor power and the greater velocity with which the auger was turned.

11. **Assumed Risk—Evidence.**

Where a servant was injured by his fingers being caught in a sausage machine, held, it was error to exclude evidence that he did not know the extent of the injury that might result from allowing his fingers to come in contact with the auger in the machine.

12. **Appeal—Instructions—Review—Exceptions.**

An instruction not excepted to on the trial by assignment of proper grounds of objection, is not properly before the trial court for consideration on motion for new trial, and so cannot be considered on appeal.

13. **Injuries to Servant—Dangerous Machinery—Master's Precautions—Instruction.**

An instruction that a master may conduct and equip his place of business with such machinery and applicances in any lawful way that may seem best to him, though other ways may be less hazardous, and that in such case, if the servant knows the dangers encountered in the manner of prosecuting the work and realizes and comprehends the mode of equipment with which he works, he assumes the risk of the hazardous method, was erroneous, as eliminating the master's duty to take such reasonable and needful precautions as would prevent the servant from being needlessly or uselessly exposed to danger.

14. **Dangerous Machine—Master's Duty.**

Where defendant provided a power sausage machine which was dangerous, he was bound to explain to his servant, employed to operate the machine, the nature and extent of the dangers to which he was exposed, and if defendant knew of,

and could have readily obtained, any contrivance or appliance which would have rendered the servant's labor less hazardous, it was his duty to provide it with reasonable diligence.

15. **Same—Assumed Risk—Instructions.**

A request to charge that the burden of maintaining the defense of assumed risk was on defendant, and in order to maintain it the jury must find that plaintiff, at time of accident, not only knew the condition of machinery that injured him, but also understood and appreciated the danger, or the danger must have been so obvious that his appreciation thereof was a necessary inference, and that if jury found defendant was negligent in failing to furnish safe machinery and appliances and a safe place to work, or in failing to warn plaintiff of the dangers incident to his employment, if there were such dangers, or to inform plaintiff of a safe method of operating the machine, if there was a safer way than that which he was directed to pursue, then plaintiff did not assume the risk, unless he knew and appreciated the same, was correct, and its refusal was error.

16. **Same—Negligence—Equipment of Machinery.**

Where a servant's hand was caught in a sausage machine while pressing the material down in the hopper, defendant was not negligent in failing to locate the belt shifter and the switch controlling the electric current supplying the motor power, at such a point as would enable the person operating the machine to reach them while doing so.

17. **Evidence—Competency—Opinion of Witness.**

Where a servant was injured by his hand becoming caught by the auger of a sausage machine, a question whether, in his opinion, if the belt had been removed by the belt shifter he could have saved his hand or part of it after it was so caught, was incompetent, as calling for an opinion of witness, the jury being as able to form one as was witness.

18. **Injuries to Servant—Assumed Risk—Evidence.**

Where a servant's hand was caught and destroyed by the auger of a sausage machine which was dangerous, questions whether defendant ever called plaintiff's attention to the fact that it was dangerous, whether he ever warned plaintiff relative thereto, and whether plaintiff understood and appreciated the danger to an operator. if he got his hand caught in it, were proper, as elucidating the extent of plaintiff's understanding and appreciation of the nature and extent of the danger.

(Opinion filed Oct. 6, 1913. Rehearing denied Feb. 7, 1914.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Anton Iverson against Carl Look, to recover damages for personal injury. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and a new trial ordered.

*Hall, Alexander & Purdy,* and *Boyce, Warren & Fairbank,* for Appellant.

In the absence of evidence to the contrary, the law will presume that at the time a person was injured he was in the exercise of ordinary care. Chase v. C., B. & Q. Railway Co., (Neb.) 135 N. W. 431; Whaley v. Vidal, (S. D.) 132 N. W. 242; Wright v. Sioux Falls Traction System, (S. D.) 133 N. W. 696.

The negligence referred to in the interrogatories could mean nothing else than contributory negligence as defined by the court in its instructions, and the answer indicates that the jury found the plaintiff guilty of contributory negligence, thus barring his recovery in the general verdict.

There is no act or omission on the part of the plaintiff testified to on trial or appearing in the record which would tend to show a lack of ordinary care on the part of the plaintiff; and a verdict of contributory negligence which must have been based solely upon either the fact that the plaintiff was injured, or evidence gathered by the view of the premises, should be set aside. Carr v. Minneapolis Railway Company, (N. D.) 112 N. W. 972; Kentucky Central Railway Co. v. Thomas, Administratrix, (Ky.) 42 Am. Rep. 208.

Contributory negligence is a defense which must be made out by showing affirmatively, not only that the plaintiff was guilty of negligence, but that such negligence co-operated with the negligence of the defendant to produce the injury. Linforth v. San Francisco Gas Co., 156 Cal. 58, 19 Am. Rep. 1230, and note.

The plaintiff was asked upon direct examination the following questions:

"You may state whether or not in your opinion, if the belt had been removed by the belt shifter you could have saved your hand or part of it after it had got caught in the machine."

"Did Mr. Look ever call your attention to the fact that this was a dangerous machine?"

"Did he ever warn you with reference to this machine?"

"Did you from that understand and appreciate the danger that an operator ran running that machine if he got his hand caught in it?"

We had a right to show that if the machine had been arranged differently and the belt could have been shifted with one hand, that even if the plaintiff were caught in the machine, the damage would have been slight and he would not have lost his hand.

The evidence shows that the machine was dangerous, and that the plaintiff was inexperienced with it, and it was the duty of the master to warn the plaintiff in regard to the danger in the use of the machine.

Before an employee can be held to have assumed the risk of an employment, he must not only know, but appreciate the danger of the employment. This is ultimately a question for the jury, but it must be based upon evidence, and the plaintiff clearly had a right to state whether at the time of the accident, he appreciated the danger which he was running. Assignments 4, 5, and 6. These assignments are all based upon the refusal of the court to allow the witness, Lewis Willig, to relate a conversation which he had with the defendant, Look, in regard to a safer method of running this machine, which happened prior to the injury of the plaintiff. One of the facts in the case which had to be established in order to prove the negligence of the defendant was that the defendant knew of a safer method of operating this machine and did not warn the plaintiff or instruct him in regard to the use of it. It was the best evidence upon this subject, and the plaintiff clearly had a right to it.

The first part of the instruction under assignment number 12 would appear to require only ordinary and reasonable care, but it is then qualified by stating that if this want of care contributed in any degree however slight to the injury, he cannot recover. This is not the law. Gregg v. Benedictine Sister's Hospital, (Minn.) 93 N. W. 669; Thomas v. Duncan, 76 Ala. 334.

The court erred in instructing the jury on the question of assumption of risk; under assignments numbers 9 and 10.

Nowhere in these instructions does the court charge the jury that the plaintiff himself must not only know the risk, but appreciate the danger. Bailey on Personal Injuries, Sec. 376; Hurst

v. Kansas City Railway Company, 63 S. W. 395; McKey v. Tourtollotte, 18 L. R. A. 543; Stewart v. Vicksburg, (Mont.) 111 Pac. 703.

Plaintiff was asked on direct examination whether he understood and appreciated the danger that an operator ran in running the machine. This evidence being excluded, and the court in no way instructing the jury that it was necessary to find that the plaintiff appreciated the danger before he could be said to have assumed the risk, it was prejudicial error.

The plaintiff requested an instruction (see assignment No. 20) as to the duty of the master to furnish to servant reasonably safe appliances and machinery and a reasonably safe place to work, and if master fails to furnish to servant such machinery and appliances in general use you would be justified in finding that the master did not use ordinary are under the circumstances. In place of this instruction the court gave the instruction: "Mr. Look had the right to conduct and equip his place with such machinery and appliances in any lawful way that may seem to him best, although other ways may be less hazardous." In this instruction we submit the court clearly erred. Cannon v. S. D. Cent. Railway Co., 137 N. W. 347.

*Joe Kirby,* for Respondent.

As to the special interrogations submitted to jury; the question of contributory negligence is not involved.

Mr. Look had the right to equip his premises with such machinery and appliances as he saw fit. Dresser's Employer's Liability, p. 423.

The rule is, that when the general danger is or ought to be known to the servant, particular details which merely enhance the danger need not be known. Dresser's Employer's Liability, p. 448; O'Maely v. Gas Light Co., 32 N. E. 1119; Stuart v. Ry. Co., 40 N. E. 180; Detroit Oil Co. v. Grabble, 94 Fed. 73.

It is urged that there was a safer mode of operating the machine known to Mr. Look, viz.—that if the plaintiff had used a stick or other foreign substance in place of his hand to push the meat down into the screw that he would not have been injured. This was so open and obvious that the jury considered the plaintiff, whom they specially found to be a man of ordinary intelligence and observation, to be advised of such fact. At the same

time it appeared from testimony that it was customary to feed the meat into the machine with both hands, and the jury may have formed the opinion that the use of a stick to push the meat down was more of a theoretical than practical way of operating the machine.

The machine was a standard machine. The manufacturers did not supply any such device. Gleason v. Smith, 51 N. E. 460; Dresser's Employer's Liability, p. 459; Ruchinsky v. French, 46 N. E. 17; Foley v. Jersey City Electric Co., 24 Atl. 487; Sullivan v. India Mfg. Co., 113 Mass. 396; Tuttle v. Detroit, Grand Haven & Milwaukee Ry. Co., 122 U. S. 195 L. C. P. 30-1114; Sanborn v. A., T. & S. F. Ry. Co., 10 Pac. 860.

Assignments 8 to 15, inclusive, should be stricken out, and not considered on this appeal, for the reason that the suggested exceptions to the charge of the court were never taken, and are therefore not reviewable. Not only under Rule XXI, Rules of Practice, but as settled by this court. Uhe v. Ry. Co., 4 S. D. 505; Winn v. Sanborn, 10 S. D. 642; State v. Millard, 138 N. W. 369. However, the said portions of the charge were good law. Norfolk Beet Sugar Co. v. Hight, 76 N. W. 566; Sackett's Instructions, Vol. II, pp. 1035-1046, and Vol. III, pp. 24-68; Rothe v. Barrett Mfg. Co., 71 N. W. 1034.

Our opponents contend that the defendant knew the use of a mallet or follower, and that it was unknown to the plaintiff. Applying every day common sense to this contention, plaintiff must have known as well as the defendant did that if some other substance than his hand was used for feeding the machine that the incidental danger would be minimized.

Plaintiff operated the machine for months after his employment began and therefore must have known just as well as the defendant did that he was dealing with something that required him to be on the lookout or he was liable to meet with an injury.

POLLEY, J. This action was brought for the recovery of damages occasioned by a personal injury received by plaintiff while in the defendant's employ. The defendant was running a butcher shop in Sioux Falls, and, in conection with this business, he had a machine for the manufacture of sausage. This machine was fastened to a bench and consisted of a horizontal cylinder, inside of which was a spiral shaped blade or auger, which revolved in

the cylinder and which was driven by an electric motor, situated in an adjoining room. The power was transmitted from the motor to an overhead line shaft, which in turn transmitted the power to the auger in the sausage machine by means of a belt and pulleys. There were two pulleys on the end of the auger, one a loose one and the other fixed to the auger shaft. When the machine was in operation, the auger revolved in the cylinder at the rate of 200 to 300 revolutions per minute. There was a belt tightener, composed of two pieces of hard wood, at one end of which was fastened a heavy roller; the other end was fastened to the wall, six or seven feet high, by means of a hinge, in such manner as to allow it to be lowered against the belt and in that way act as a tightener. In order to run the machine, it was necessary to put the belt on the pulley that was fixed to the auger shaft and then lower the tightener until it came in contact with the belt. In order to take off the belt, it was necessary to raise the tightener and push the belt from the fixed pulley onto the loose or idle one. The electric current that supplied the motor was controlled by a switch, situated in the same room with the motor, and a person operating the machine had no way of stopping the machine when it was in motion except by raising the tightener and throwing off the belt or by going into the adjoining room and disconnecting the electric current by means of the switch. At one end of the cylinder of the machine was an opening, or hopper, in the form of a funnel, 4 or 5 inches high and some 4½ inches in diameter, and it was through this opening that the meat (to be made into sausage) was fed into the machine. The meat was placed on the left-hand side of the operator, who fed it into the hopper with his left hand, and with his right hand he pressed it down into the machine until it came in contact with the auger, which drew it into the cylinder and forced it against the cutters at the opposite end of the cylinder.

The plaintiff, who was a young man 23 years of age, entered the employ of the defendant about the middle of September, 1909. He had worked around a meat market the greater part of the time since he was 14 years old; he had driven delivery wagon, helped at slaughtering, trimmed meat, and did general work around a meat market, but did not pretend to be an experienced butcher or expert sausage maker. He had operated a sausage machine, to some extent, in a shop where he had worked

at Brookings. The machine he used was similar, in principle, to the machine used by defendant but it was smaller and was run by a crank, turned by the operator with one hand while he fed the meat into it with the other. He was not employed by defendant to do any one particular kind of work but went on about the same as he had done during his employment in Brookings, doing general work around the shop. After he had been there three or four days, he was directed by defendant to run the sausage machine above described. He had seen defendant run the machine, and plaintiff worked it just as he had seen the defendant do it. Owing to the manner in which the meat was pressed into the cylinder by the hand and the high velocity of the auger when in motion, it was apparent that, if a person allowed his hand to come in contact with the auger, he was bound to suffer injury, and that the exercise of a high degree of care and attention was necessary in order to avoid coming in contact with the auger while pressing down the meat. This was a fact well known and appreciated by the defendant, for he had once had his hand caught by the auger, while pressing meat into the machine, and, before he could extricate it, had lost a portion of his thumb. It appeared, from the evidence, that it was necessary to run the meat through the machine twice; that, in the manufacture of certain kinds of sausage, a mixture of both fresh and salt meats was used; that salt meat was more likely to clog the machine than was fresh meat; and that meat was more likely to clog the machine when being put through the second time than the first. It also appeared that meat, when being run through the second time, and especially if it were part salt meat, would stick to the hand of the person who was putting it into the machine, and that, to prevent this, it was necessary for the operator to wet his hand by dipping it into water, and for that purpose a pail of water was kept on the bench at the left-hand side of the operator.

Prior to the employment of plaintiff, there had been used by defendant, or his employees with his knowledge, a wooden mallet, or follower, for the purpose of pressing the meat into the machine. This was a piece of wood, six or eight inches in length, shaped like a potato masher, and could be used to press the meat into the machine without danger to the hand; and, so far as appears from the evidence, plaintiff could have done as much, and

just as efficient, work by the use of this appliance as he could with
his hand. This appliance was in the shop while plaintiff was
working there, but it was never called to his attention, nor did he
know of its existence or that there was any way of pressing the
meat into the machine except with the hand.

Plaintiff continued in the employment of the defendant for a
period of six months. He acted as general assistant around the
shop and, among other duties, ran the sausage machine at inter-
vals of probably an hour at a time once or twice a week all the
time he was there. Defendant never explained the dangerous
character of the machine to plaintiff, nor the fact that, if he
allowed his fingers to come in contact with the auger, it would
probably draw his whole hand into the cylinder, nor cautioned him
in regard to the care necessary to be exercised in order to avoid
injury. The accident complained of occurred while plaintiff was
operating the sausage machine in the usual manner. The thumb
on his right hand was caught by the auger in the cylinder and,
before it could be stopped, his whole hand was drawn into the
cylinder and so badly mangled that it had to be amputated at or
above the wrist. When his hand was caught, he attempted to
throw off the belt with the other hand and in that way stop the
machine, but he was thrown over on his left side onto the bench
and was unable to remove the belt or to extricate himself until the
arrival of fellow workmen from an adjoining room, who stopped
the machine and released him. The trial resulted in a verdict and
judgment for the defendant, and, the court having denied plaintiff's
motion for a new trial, he appeals to this court.

Plaintiff contends that his injury was the result of negligence
on the part of the defendant, which negligence consisted in de-
fendant's failure to provide plaintiff with safe appliances and
with a safe place in which to work and in defendant's failure
to properly instruct him and caution him as to the nature and
extent of the danger incident to the operation of the machine.
The defendant's defense was a general denial, the assumption of
risk, and contributory negligence on the part of the plaintiff. The
latter two defenses dispose of the first.

At the close of the trial, the court, at the request of the de-
fendant, submitted to the jury the following interrogatories: (1)
"Was the plaintiff, at the time he was injured, a person of or-

dinary intelligence, discretion, and judgment, similar to other people of like age and experience?" (2) "Was the plaintiff negligent in allowing his hand to come in contact with the cutting machinery of the machine, which resulted in his injury?" (3) "Could the plaintiff, Mr. Iverson, by the exercise of care and caution, which was, under the circumstances, reasonable, practicable, and available, have avoided the injury?" Each of these interrogatories was answered by the jury in the affirmative. The submission of the latter two questions to the jury was excepted to by the plaintiff, and it is now urged by him that their submission constituted prejudicial error.

[1] The first interrogatory was purely gratuitous on the part of the court. When a person comes into court as a party to an action in his own name, he is presumed to be a person of ordinary intelligence, discretion, and judgment, at least until the contrary is made to appear. Nothing appears in this record to make the plaintiff an exception to the general rule, and the submission of this interrogatory to the jury was wholly immaterial to any issue in the case and was a useless incumbrance of the record.

[2] The second and third interrogatories, together with an instruction complained of in plaintiff's assignment No. 13, were submitted to the jury under defendant's theory that plaintiff's injury was the result of contributory negligence. This instruction is as follows: "You are instructed that it was the duty of Mr. Iverson to exercise ordinary and reasonable care in the protection of himself in the performance of his work. If he did not do so, and his want of care contributed in any degree, however slight, to the injury to himself, then he is guilty of contributory negligence and cannot recover damages from Mr. Look, even though Mr. Look were negligent."

It is claimed by the plaintiff, and borne out by the record, that there was no evidence whatever in the case to warrant the submission of the question of contributory negligence to the jury. Defendant in his answer alleged that plaintiff's injury was occasioned by his own negligence and carelessness in operating the sausage machine, but there was no evidence whatever in support of this allegation. The evidence showed that defendant directed plaintiff to operate this machine; that plaintiff had seen defendant

operate it; and that plaintiff operated it in exactly the same manner in which he had seen the defendant do it. There was no evidence that he was guilty of a lack of ordinary care or attention in the manner in which he did his work, or that he was inattentive, careless, or reckless of the danger to which he was exposed; and the only evidence in the entire record that can support the theory of negligence on the part of the plaintiff is the inference of negligence to be drawn from the happening of the accident itself.

This inference, however, is not a legal one, and it has been decided by this court that it is not to be indulged in any case. In Whaley et al. v. Vidal et al., 27 S. D. 642, 132 N. W. 242, a case brought to recover damages for injuries sustained at a railroad crossing, this court said: "In the absence of evidence to the contrary, the law presumes that the deceased exercised such degree of care and caution as the circumstances and the law required, and the burden of proving that he did not rests upon the defendants throughout the case and is a question for the jury." And again, on page 644 of 27 S. D., on page 250 of 132 N. W., the court say: "It seems to be the settled law that contributory negligence is an affirmative defense in a case where the defendant has been shown to be guilty of negligence and must be proven by the defendant either by direct evidence or by proof of circumstances from which only the inference of contributory negligence could be drawn. And where there is a failure of evidence proving or tending to prove the party injured did not stop, look, and listen, the jury are required to presume that the party injured did exercise ordinary care and was not guilty of contributory negligence." Wright v. Sioux Falls Traction System, 28 S. D. 379, 133 N. W. 696.

[3] Contributory negligence is an affirmative defense, and, before it can be submitted to the jury, it must be supported by some evidence tending to show that, at the time of the accident which caused the injury, plaintiff was not exercising the proper degree of care in the performance of his duties; and the submission of the question of plaintiff's negligence to the jury was an assumption on the part of the court that there was evidence in the record sufficient to warrant a finding by the jury that the plaintiff was guilty of culpable negligence at the time of the in-

jury. There is no such evidence in the record, and, in the absence of such evidence, plaintiff is presumed to have been exercising a degree of care commensurate with the degree of danger to which he was exposed. Defendant having failed to submit any evidence tending to show negligence on plaintiff's part, it was error for the court to submit the question of contributory negligence to the jury.

[4] But the instruction complained of held the plaintiff to a higher degree of care than the law requires. The court first correctly instructed the jury that it was the duty of the plaintiff to "exercise ordinary and reasonable care in the protection of himself in the performance of his work," but the portion of the instruction—which told the jury that, if plaintff's want of care "contributed in any degree, however slight," to his injury, he was guilty of contributory negligence—required of plaintiff the exercise of a higher degree of care than ordinary or reasonable, because to avoid negligence, *however slight,* requires the exercise of the highest degree of care and attention.

[5] But, aside from this, the instruction, applied to the facts in this particular case, is misleading and confusing to the jury. It will be remembered that, in addition to pressing the meat, when it clogged, into the hopper with his right hand, he was also required to feed it into the hopper with his left hand. The evidence showed that, at the time of the accident, he was putting through the machine a mixture of fresh and salt meat the second time; that this was the kind of material that stuck to his hand; and that, in order to prevent it from sticking to his hand, he was required to dip his fingers into a pail of water kept at hand for that purpose. In order for him to do this, it was necessary that he must, to a certain degree, divert his attention from the work of pressing the meat into the hopper with his right hand to the work of feeding the meat into the hopper (after having dipped his fingers into the water) with his left. This, so far as the work he was doing with his right hand (the hand that was injured) was concerned, would constitute negligence, *"however slight,"* as defined by the court, and, under the instruction complained of, would preclude him from recovery for an injury resulting therefrom, although such diversion of attention was necessary in the performance of his duty. This instruction required a higher degree

of care and attention to the work he was doing with his right hand than was possible, under the circumstances, or is required by the law, and brings the case within the rule laid down in Labatt on Master and Servant (2d Ed.) § 964, which is quoted, with approval by this court in Perreault v. Wisconsin Granite Co., 144 N. W. 110, 32 S. D. 275, and being, in part, as follows: "If the degree of care which the servant must exercise in order to escape injury is greater than that which, considering the exigencies of the work and other matters which are likely to divert his attention, it is reasonable to demand from men of average prudence and average powers of observation, then it may be fairly maintained that the master ought to bear the responsibility of any accident which may occur, quite irrespective of the question whether the servant was or was not aware of the nature and extent of the danger."

[6] But it is claimed by the defendant that, even though the plaintiff's injury was not the result of negligence at the time of the accident, the dangerous character of the sausage machine was so obvious and so well understood by the plaintiff that he assumed the risk of injury therefrom by the acceptance of his employment by the defendant. This brings us to the really important question of the case. Upon this branch of the case, the court instructed the jury as follows: "He [meaning the plaintiff] further says, in his complaint, that he did not know of the danger or risk which he assumed by feeding the machine by hand and did not appreciate such danger or risk." It was urged by appellant, on oral argument, that this language was misleading to the jury and, in effect, told them that the plaintiff, by accepting the employment of the defendant, assumed whatever risk or danger there was incident to the operation of this machine. In this contention the appellant is right. Plaintiff alleged, in his complaint, that he did not know or appreciate the danger or risk *incident* to the operation of the machine. But the language of the court, standing alone as it did, may have been understood by the jury, and may have been accepted by them as a direction from the court, that the defendant had, as a matter of law, *assumed* the risk of whatever danger there may have been incident to the operation of the machine, and plaintiff's rights may have been materially prejudiced thereby.

[7] The court further instructed the jury that: "If you

find, by a preponderance of the evidence, that the defendant was guilty of negligence in failing to furnish safe machinery and appliances for the plaintiff to work with, or in failing to instruct or warn the plaintiff as to the dangers incident to his employment, if you find that there were such dangers, or in failing to inform the plaintiff of a safe method of operating the machine in question, if you find there was a safer way than that employed in operating said machine, then and in that case you would not be justified in finding that the plaintiff assumed the risk, unless you find that he knew the danger, or that it was so obvious that he ought to have known it." These instructions do not correctly state the law. They do not explain the extent of the knowledge and understanding that must be possessed by the employee before he can be held, as a matter of law, to have assumed the risk of the danger to which he was exposed. In other words, the extent of the servant's assumption of risk depends upon the extent of his knowledge as to the nature and extent of the dangers incident to his employment.

[8] An assumed risk is one that the servant necessarily had in mind when he entered into his contract of employment.

[9] It is true that, under the general rule, the servant assumes the obvious risks of the employment which he undertakes. It is not sufficient, however, that he knows that the employment is more or less dangerous; he must understand and appreciate the nature and extent of the danger incurred. Bagley v. Wonderland Co., 205 Mass. 238, 91 N. E. 317; O'Toole v. Pruyn, 201 Mass. 126, 87 N. E. 608; Labatt on Master and Servant (2d Ed.) 1190; Nadau v. White River Lumber Co., 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29; Pennsylvania Coal Co. v. Kelly, 54 Ill. App. 626.

[10] In this case the dangerous character of the machine was obvious. The plaintiff knew it was dangerous and knew that, if he got his hand into it, it would get hurt, but it does not seem ever to have occurred to him, and it was never explained to him by defendant, that, if he allowed his fingers to come in contact with the revolving auger in the machine, it would draw his entire hand into it. He had had previous experience with a machine of similar character, but it was a small one that was run by a crank, turned by the operator; it was wholly under his control,

and, by stopping the crank, he stopped the whole machine. In such a machine, if the operator's fingers were caught by the auger, he would instinctively stop the crank, and but little, if any, injury would be caused; and the loss of a hand, or even serious injury therein, would hardly be possible.

[11] Whether or not he appreciated the increased danger of the defendant's machine by reason of the fact that he had no control over the motive power and the greater velocity with which the auger turned was a question of fact that should have been submitted to the jury, and it was error for the court to exclude evidence offered on the part of the plaintiff tending to show that he did not know the extent of the injury that might result from allowing his fingers to come in contact with the revolving auger in the machine.

Respondent contends in his brief that the two instructions last quoted were not excepted to by appellant, and that for that reason the assignment specifying these two instructions as error should be stricken from the record and not considered on this appeal. We have carefully examined the exceptions and assignments called to our attention by this motion. While the specications taken to these instructions are by no means as specific as they should have been, still appellant's first and fifth exceptions to the instructions of the court are sufficient to suggest the objectionable matter contained in these two instructions and to porperly call them to the attention of the trial court on the hearing for a new trial. This being so, they are properly before this court for consideration.

[12] The same objection is made to a consideration of the following instruction: "You are instructed that a party carrying on a business, as Mr. Look in this case appears to have been doing, has a right to conduct and equip his place with such machinery and appliances in any lawful way that may seem to him best, although other ways may be less hazardous. In such case, if the servant knows the dangers encountered upon the manner of prosecuting the work and realizes and comprehends the mode of equipment with which he works, he assumes the risk of the hazardous method." This instruction is one that relates to "instrumentalities" rather than to the "assumption of risks," and a careful examina-

ion of appellant's exceptions fails to disclose anything that reaches this subject. For that reason it was not properly before the trial court for consideration upon the motion for a new trial, although set out in full in appellant's assignments of error; therefore, so far as the granting or denying of a new trial is concerned, it is not properly before this court. But inasmuch as a new trial will have to be awarded, because of other errors that occurred at the trial, it is proper that we express our views of the matter contained in this instruction in order that the same error may be avoided at another trial.

[13] This instruction should have been qualified by the further instruction that it was incumbent upon the defendant to take such reasonable and needful precautions in regard to the machinery being used by the plaintiff as would not subject him to needless or useless exposure to danger.

[14] It may have been the rule formerly that an employer might equip his place of business with such machinery and appliances as he saw fit, and his servant, by undertaking to operate such machinery, assumed the risks of dangers incident thereto. But this rule has been greatly limited in recent years, by statute in some states, and by the more humane and enlightened views of the courts of others, until the law now imposes upon the employer the consequences of dangers to which the employee is needlessly subjected. This question was before the Supreme Court of the United States in Mather et al. v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, where the court announced the law as follows: "All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familar with the business and having sufficient skill therein, may properly be employed upon them; but in such cases, where the occupation is attended with danger to life, body, or limb, it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. * * * Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb

should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that, in all occupations which are attended with great and unusual danger, there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations and by the laborers themselves as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance and should be in all cases strictly enforced."

Tested by the above rule, the defendant in the case at bar was under obligations to explain to the plaintiff the nature and the extent of the dangers to which he was exposed, and if he knew of, and could have readily attained, any contrivance or appliance that would have rendered plaintiff's labor less hazardous, it was his legal duty to provide them. Defendant was in a position to possess and, based upon his experience with the machine in question, did possess superior knowledge as to the dangers to which plaintiff was exposed, and it was his duty to explain them to plaintiff and, if it could have been done with reasonable diligence and with appliances known to him and "readily attainable," to have obviated them. Defendant's occupation was a useful and lawful one, but this does not excuse him from taking all reasonable precaution to protect his employes from injury to life or limb. The

sausage machine in question, equipped and operated as it was, was an exceedingly dangerous machine; and this fact brings him within the rule above announced and imposed upon him the duty of providing "all appliances, readily attainable, known to science for the prevention of accidents," and his failure to provide the plaintiff with such appliances as were known and easily attainable by him "will be regarded as proof of culpable negligence." This rule has been approved and adopted in the following cases: Paauhau Sugar Plantation Co. v. Palapala, 127 Fed. 926, 62 C. C. A. 552; Dry Dock Co. v. Atlantic Steamship Co., 108 Fed. 425, 47 C. C. A. 443; Whitney v. New York R. R. Co., 102 Fed. 852, 43 C. C. A. 19, 50 L. R. A. 615; Grace Co. v. Kennedy, 99 Fed. 682, 40 C. C. A. 69; Curtis v. McNair, 173 Mo. 283, 73 S. W. 170; Myrberg v. Baltimore & S. M. & R. Co., 25 Wash. 371, 65 Pac. 541; Cannon v. South Dakota Central Ry. Co., 29 S. D. 433, 137 N. W. 347.

[15] The plaintiff requested the court to give the following instructions:

"The defendant in his answer seeks to avoid liability for the claim of the plaintiff herein of damages occasioned by the loss of his right hand while employed by the defendant in operating a certain sausage machine described in the proceedings in this action upon the ground that the said plaintiff, by accepting employment in the use of said machine, assumed the risk of all ordinary dangers incident to his said employment. You are hereby instructed that the burden of proof of maintaining said defense is upon the defendant, and that in order to maintain said defense and justify a verdict in his favor, based thereon, he must convince you, by a preponderance of the evidence, that the plaintiff, at the time of his employment and at the time of the accident, not only knew the condition of said machinery, whereby the same was rendered dangerous, if it appears that it was dangerous, but also that he knew and understood and appreciated the danger, or else that the danger was so obvious that his appreciation of it is a necessary inference."

"If you find, by a preponderance of the evidence, that the said defendant was guilty of negligence in failing to furnish safe machinery and appliances and a safe place for the plaintiff to work, or in failing to instruct or warn the plaintiff as to the

dangers incident to his employment, if you find there were such dangers, or in failing to inform the plaintiff of a safe method of operating the machine in question, if you find there was a safer way than that in which the plaintiff was directed to operate such machine, then and in that case you would not be justified in finding that the plaintiff assumed the risk occasioned by such negligence of the defendant unless you find that he knew and appreciated the same."

These instructions, we believe, correctly state the law and are in accord with the general rule that, in order to preclude a servant from recovering for injuries caused by the use of dangerous machinery, he must not only know of the dangerous character of such machinery but must also appreciate the nature and extent of the danger to which he is exposed. These instructions were as favorable to the defendant as he was entitled to, under the facts as disclosed by the record in this case, and the refusal to give them was error.

[16] It is contended by appellant that the defendant was guilty of culpable negligence because the belt shifter and the switch that controlled the electric current that supplied the motive power to run the machine were not placed within reach of a person while operating it. We are not able to agree with this contention. In these respects the machine seems to have been equipped in the ordinary maner. It is true the switch and the belt shifter might have been placed within reach of the operator, but whether a person, seized by the hand and thrown over, as plaintiff was at the time of the injury, could have turned either the switch or the belt shifter is extremely problematical. It would not only depend upon which side of him they were placed and which way he was thrown but also upon whether a person, situated as plaintiff was, would have the presence of mind to operate either one. If the wire conducting the electric current had been so arranged as to be connected by a pressure of the foot of the operator and disconnected when the pressure were removed, it is hardly probable that so serious an injury as that suffered by plaintiff could have been inflicted. But this method of controlling the current does not appear from the evidence to be in common use or to have occurred to either of the parties.

[17] At the trial plaintiff was asked the following question:

"You may state whether or not, in your opinion, if the belt had been removed by the belt shifter, you could have saved your hand, or part of it, after it had got caught in the machine?" The answer to this question was excluded by the court, and the court's ruling is assigned as error. This question was incompetent. It called for an expression of opinion that the jury was as able to form as the witness, and the court was right in excluding the answer.

[18] The plaintiff, on direct examination, was also asked the following questions: "Did Mr. Look ever call your attention to the fact that this was a dangerous machine?" "Did he ever warn you with reference to this machine?" "Did you, from that, understand and appreciate the danger that an operator ran running that machine, if he got his hand caught in it?" Defendant's objections to these questions were sustained by the court, and these rulings were excepted to by appellant. We are of the opinion that the exceptions were well taken. These questions go to the extent of the plaintiff's understanding and appreciation of the nature and extent of the danger to which he was exposed while operating the machine in question. As the extent of the risk assumed by the plaintiff depended upon the extent of his knowledge and appreciation of the danger, these questions should have been answered.

Because of the errors above pointed out, the judgment and order appealed from are reversed, and a new trial ordered.